ICKES, Secretary of the Interior, v. CUYUNA
MINING & INVESTMENT CO.
. No. 5982.

Court of Appeals of the District of Columbia.
Argued Jan. 5, 1934.
Decided Feb. 19, 1934.

Rehearing Denied March 19, 1934.

Victor H. Wallace, of Washington, D. C., for appellant.

Manton M. Wyvell, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

The Secretary of the Interior appeals from a decree of the Supreme Court of the District of Columbia sustaining appellee's right to an adjustment of claims under the War Minerals Relief Act, as amended by the Act of February 13, 1929, 45 Stat. 1166 (50 USCA § 80 note).

It appears that following the passage of the War Minerals Relief Act of March 2, 1919, 40 Stat. 1272 (50 USCA § 80 note), the Northern Minnesota Ore Company, a a Minnesota corporation, filed a claim with the Secretary of the Interior for $196,818.66 for losses which it claimed it had sustained in producing and preparing to produce manganese. The Secretary awarded on account of

this claim, $59,645.12, which was paid to the claimant company. Following the Act of Congress of November 23, 1921, 42 Stat. 322 (50 USCA § 80 note), amending section 5 of the War Minerals Relief Act of 1919, claimant filed an application for reconsideration of its claim; and on this application the Secretary awarded $47,072.70, which was also paid.

In 1927, the Northern Minnesota Ore Company went into receivership; and on October 30, 1928, by decree of the court, all the property, real and personal, rights of action, and other assets of the Northern Minnesota Ore Company, were transferred and assigned to the Cuyuna Mining & Investment Company, plaintiff in this action. Following the passage of the 1929 act, plaintiff company applied to the Secretary of the Interior for a further adjudication of the original claims of the Minnesota company. From a decision of the Secretary, denying plaintiff's right to an adjustment, plaintiff company filed its petition in this action for a review of the final decision of the Secretary.

The 1929 act provides, among other things, as follows: "That any claimant who has heretofore filed with the Secretary of the Interior within the time and manner provided by existing law a claim under said Acts generally known as the War Minerals Relief Act (40 Stat. 1272, and its amendments [50 USCA § 80 note]) may within one year from the date of the passage and approval hereof petition the Supreme Court of the District of Columbia to review the final decision of the Secretary of the Interior upon any question of law which has arisen or which may hereafter arise in the adjustment, liquidation, and payment of his claim under said Acts, but the decision of the Secretary of the Interior on all questions of fact shall be conclusive and not subject to review by any court." The act then confers jurisdiction upon the Supreme Court of the District of Columbia, "as a district court of the United States," to hear and determine such suits according to the usual procedure, and subject to the rules and orders of the court with respect thereto, and to enter proper orders, judgments, and decrees therein, reserving the right of appeal.

Plaintiff in their petition base their claim upon errors made by the Secretary in the adjustments under the 1919 and 1921 acts for failure to allow sufficient salvage deductions for supplies on hand at the time of the armistice, and on the property of the Minnesota company. It alleges that the Secretary also

erred in denying a claim for mining leases, property, and town site, which it is alleged is reimbursable under the act of 1919. It is also alleged that the Secretary erred in denying plaintiff's claims for a salary paid to one Potts, travel expenses, taxes, royalties, filing of deeds, surveying, stock sales commission, and expense of financing and promoting, interest, prospecting, and insurance, all of which it is alleged were proper claims to be considered and allowed under the 1919 act.

The Secretary's defense to the petition denied the right of plaintiff company to maintain this action on the ground that the transfer by the receiver of the real and personal property, rights of action, and other assets to plaintiff company, did not invest it with the authority, power, or right to maintain this suit. Also, upon the further ground that the establishment of the claims set forth depends upon issues of fact, and that, by the provisions of the act, the findings of the Secretary on such issues are made conclusive.

The principal question here involved is whether or not the plaintiff company has acquired rights through the receiver of the Minnesota company that can be enforced. The essential object of the 1919 act was to provide a remedy for the payment of persons or companies that had furnished supplies or services directly to the Government during the war. Section 5 of the act (50 USCA § 80 note), however, had as its object a different purpose—namely, to relieve persons and companies who had been invited by the government to invest money in the production or preparation for the production of certain metals or materials for use in the war, and who had incurred expense and suffered losses because of the armistice, and the lack of market for such products.

Under the act, the Secretary of the Interior was authorized to make adjustments and payments in each case as he should determine to be just and equitable. The decision of the Secretary was "conclusive and final." Under the third proviso of section 5, it was declared, among other things, "that no claim shall be allowed or paid by said Secretary unless it shall appear to the satisfaction of the said Secretary that the expenditures so made or obligations so incurred by the claimant were made in good faith for or upon property which contained * * * manganese * * * in sufficient quantities to be of commercial importance." The fourth proviso declared "that no claims shall be paid unless it shall appear to the satisfaction of said Secretary that moneys were invested or

obligations were incurred subsequent to April sixth, nineteen hundred and seventeen, and prior to November twelfth, nineteen hundred and eighteen, in a legitimate attempt to produce * * * manganese * * * for the prosecution of the war, and that no profits of any kind shall be included in the allowance of any of said claims, and that no investment for merely speculative purposes shall be recognized in any manner by said Secretary."

The last paragraph of the section provided: "That nothing in this section shall be construed to confer jurisdiction upon any court to entertain a suit against the United States."

Section 5 was amended by the act of 1921, by the addition of another proviso for the relief of claimants who, in response to any government agency mentioned in the act, had expended money in the producing or preparing to produce, among other things, manganese; and had mailed or filed their claims in time, showing that action had been taken in response to such request, were entitled to be reimbursed for the net losses they had incurred from the appropriation in said act. It further provided: "If in claims passed upon under said Act awards have been denied or made on rulings contrary to the provisions of this amendment, or through miscalculation, the Secretary of the Interior may award proper amounts or additional amounts."

The act of 1929 merely provided a method by which the final decision of the Secretary of the Interior, upon questions of law, might be reviewed in the courts of the District of Columbia. The act in no way extended the jurisdiction of the Secretary beyond that embraced in the 1919 and 1921 acts.

Chief Justice Taft, in Work v. United States ex rel. Rives, 267 U. S. 175, 45 S. Ct. 252, 254, 69 L. Ed. 561, discussing the character of the 1919 and 1921 acts, said: "The above summary of section 5 clearly shows that Congress was seeking to save the beneficiaries from losses which it would have been under no legal obligation to make good if a private person. It was a gratuity based on equitable and moral considerations. United States v. Realty Co., 163 U. S. 427, 439, 16 S. Ct. 1120, 41 L. Ed. 215; Allen v. Smith, 173 U. S. 389, 402, 19 S. Ct. 446, 43 L. Ed. 741. Congress did not wish to create a legal claim. It was not dealing with vested rights. It did not, as it did with the claims for supplies and services directly furnished the government under the first and second sections of the act, make the losses recoverable in a court, but

expressly provided otherwise. It dealt with the subject with the utmost caution. It hedged the granting of the equitable gratuity with limitations to prevent the use of the statute for the recovery of doubtful or fraudulent claims or merely speculative losses. It vested the Secretary with power to reject all losses except as he was satisfied that they were just and equitable and it made his decision conclusive and final. Final against whom? Against the claimant. He could not resort to court to review the Secretary's decision. This was expressly forbidden. By the fifth proviso, however, the government was permitted through any of its agencies or even by a committee of Congress duly authorized, to review the settlement by the Secretary and by necessary implication to reverse it. If the government was defrauded, it was authorized to sue to recover any money paid under the award."

This decision was rendered prior to the passage of the 1929 act, but there is nothing in that act which in any way changes the character of the claims. The claims still remain purely in the nature of a gratuity by the government, and are not legal claims against the government, nor does the act create in the claimants any vested legal rights. The 1929 act limits the right of action to a claimant whose claims had been adjusted under the prior acts by the Secretary of the Interior.

Our attention has been directed to the case of the Western Pacific Railroad Company v. United States, 268 U. S. 271, 45 S. Ct. 503, 69 L. Ed. 951, which was appealed from a decision of the Court of Claims, dismissing a claim for the difference between the land grant rates and the full tariff rates, for the transportation of passengers carried at the request of the government. The claim was for transportation services alleged to have been furnished by a predecessor in title of the claimant company. The claimant became the purchaser of the railway property under a sale made by a trustee in the federal District Court of California. This case did not involve a gratuity, but a legal claim, constituting a vested right. The court held that the provisions of section 3477 of the Revised Statutes (31 USCA § 203), forbidding the assignment of claims against the United States, only applied to voluntary assignments of demands against the government, and do not apply to transfers of title by operation of law. The rule there announced, we think, is inapplicable to the present case, where the claim is based entirely upon a gratuity.

At the time of the receivership sale, the claims of the Minnesota company, under both the 1919 and 1921 acts, had been adjusted by the Secretary of the Interior. No appeal or review was open to the claimant. The case was closed. The act of 1929 had not been passed, hence the Minnesota company had no right of action against the United States which could pass by the sale. The adjusted claims, mere gratuities, never did constitute legal claims, or vested rights that could be enforced in any tribunal, hence they were incapable of conveyance, even by operation of law. Whether the Minnesota company could have availed itself of the privilege conferred by the 1929 act, and had its claims reviewed by the Secretary, is not before us; but clearly plaintiff company has acquired no such interest in the claims in question as entitles it to be heard.

The judgment is reversed.