**CROWLEY v. ICKES, Secretary of Interior. No. 6537.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 5, 1936.

Decided March 23, 1936.

574

James E. Trask, of St. Paul, Minn., and T. S. Plowman, of Washington, D. C., for appellant.

Nathan R. Margold, of Washington, D. C., Frederick Bernays Wiener, of Providence, R. I., and William H. Abbott, of Chicago, Ill., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice. .

Appellant is receiver of the Cuyuna-Minneapolis Iron Company. The company is a Minnesota corporation whose property in 1921, in a creditor's suit, was placed in the hands of a receiver by a state court of Minnesota. The original receiver died in 1929, and was succeeded by appellant by appointment of the court shortly thereafter. On March 2, 1919 (40 Stat. 1272), the Act of Congress known as the War Minerals Relief Act (50 U. S.C.A. § 80 note) was approved by the President and became a law. In December, 1921, the company filed with the Secretary of the Interior a claim for losses sustained in producing and preparing to produce manganese under government stimulation. An award followed in October, 1922, resulting in an allowance of $183,747.30 which was paid.[1] At the same time other items of the claim in the aggregate sum of $189,319.28 were rejected.

By Act of February 13, 1929, 45 Stat. 1166 (50 U.S.C.A. § 80 note), Congress amended the act, providing, among other things: "Any claimant who has heretofore filed with the Secretary of the Interior within the time and manner provided by existing law a claim under said Acts generally known as the War Minerals Acts (Fortieth Statutes, page 1272, and its amendments) may within one year from the date of the passage and approval hereof petition the Supreme Court of the District of Columbia to review the final decision of the Secretary of the Interior upon any question of law which has arisen or which may hereafter arise in the adjustment, liquidation, and payment of his claim under said Acts, but the decision of the Secretary of the Interior on all questions of fact shall be conclusive and not subject to review by any court." Section 1 (50 U.S.C.A. § 80 note).

The effect of this amendment is to confer upon the Supreme Court of the District of Columbia, "as a district court of the United States," jurisdiction "to hear and determine all such suits and enter all orders, judgments, and decrees therein, subject to the usual right of appeal by either party to the Court of Appeals" (now United States Court of Appeals). Section 3 (50 U.S.C.A. § 80 note).

Appellant commenced this action in the Supreme Court of the District on the 11th day of February, 1930. There was a trial in June, 1932, on petition, answer, and stipulation as to the record. At the trial, the Secretary moved to dismiss on the ground that the right, under the statute, to collect and enforce payment of the claim did not pass to the receiver. The motion was denied, and the trial court found that certain items of the claim previously rejected in the final decision of the Secretary of the Interior were proper items for consideration, and that the Secretary erred in rejecting them. Shortly thereafter, this court decided the case of Ickes v. Cuyuna Mining & Investment Company, 63 App.D.C. 91, 69 F.(2d) 662, 664. Thereupon, the Secretary petitioned

---

[1] The receiver had been previously appointed and his receipt for the award when made was accepted by the Secretary.

for rehearing on his motion, and a rehearing was allowed, as a result of which the lower court, on the authority of the Ickes Case, dismissed appellant's bill. In taking this action, the court said: "The question now presented has been fully argued orally and in briefs of counsel. Careful consideration of the arguments, as well as of the record and briefs filed in the Court of Appeals [in the Ickes Case], has convinced me that the decision of that Court rests on the broad ground that claims under the War Minerals Relief Act may not be transferred by operation of law and that the privilege of petitioning this court for review is limited to the original claimant alone and does not pass to the receiver of a corporate claimant. * * *"

On this appeal the Secretary likewise insists that the case here is controlled by our decision in the Ickes Case. But we think the facts in the two cases differ materially, and that the conclusion reached by us in the Ickes Case does not foreclose the claim asserted here. In the former case, the mining company was the purchaser of the assets of Northern Minnesota Ore Company. The latter company had filed its War Minerals Relief claim under the Act of March 2, 1919, and received an award thereon. It went into receivership in 1927; and on October 30, 1928, nearly four months before the Act of 1929 was passed, the receiver of the Minnesota company, under an order of the court, made a sale of all the property, real and personal, rights of action, and other assets of that company to Cuyuna Mining & Investment Company. After the 1929 act, the latter company, *as such purchaser,* applied to the Secretary of the Interior for a further adjudication of the original claims of the Minnesota company. Upon rejection, it brought an action in the District Supreme Court, and on appeal to this court we said: "At the time of the receivership sale, the claim of the Minnesota Company, under both the 1919 and 1921 Acts [40 Stat. 1272, 42 Stat. 322 (50 U.S.C.A. § 80 note)], had been adjusted by the Secretary of the Interior. No appeal or review was open to the claimant. The case was closed. The Act of [Feb. 13] 1929 [50 U.S.C.A. § 80 note] had not been passed, hence the Minnesota Company had no right of action against the United States which could pass by the sale. The adjusted claims,

mere gratuities, never did constitute legal claims, or vested rights that could be enforced in any tribunal, hence they were incapable of conveyance, even by operation of law."

The real basis of our decision was that the Cuyuna Mining & Investment Company, at the time of the sale by the receiver of the Northern Minnesota Ore Company, bought only what was in existence when it consummated its purchase, and that the sale by the receiver did not vest the purchaser with a right of action not then in existence; though we also said that the rights created by the 1929 act were in the nature of gratuities and were not legal claims or vested rights capable of conveyance, even by operation of law. And this brings us now to consider whether the claim asserted here stands upon any firmer base. The Secretary insists it does not. He says that appellant is the assignee and legal successor of the claimant corporation, and that his right is like the right of an assignee in bankruptcy to the assets of the bankrupt; i. e., a transferee of title. In other words, that appellant, as receiver, is the legal successor of the corporation, and not merely the custodian of its assets. We think the answer turns upon the provisions of the Minnesota statute applicable to receivers appointed for insolvents in that state. The section is 8013 of the 1923 General Statutes of Minnesota, and is as follows:

"Upon complaint of a person obtaining judgment against a corporation or his representatives, made after the return unsatisfied of an execution issued thereon, the court may sequestrate the stock, property, things in action, and effects of such corporation, and appoint a receiver of the same, and upon final judgment upon any such complaint the court shall order the property remaining, or the proceeds thereof, to be disposed of under its direction, proportionately in the following order:

"1. In payment of the costs and expenses of the receivership.

"2. Debts due the United States and the state of Minnesota, if any.

"3. Taxes and assessments, if any.

"4. Claims duly proved and allowed of clerks, servants, or laborers, for services performed within three months preceding the appointment of the receiver, if any.

"5. Other claims duly proved and allowed.

"After payment of the expenses of receivership and claims of creditors duly proved, the remainder, if any there be, shall be distributed pro rata among the stockholders proving themselves entitled thereto."

The statute, in the form in which it now appears, has come down through successive codifications from 1878, and in Arthur v. Willius (1890) 44 Minn. 409, 46 N.W. 851, the Supreme Court of Minnesota considered the powers of a receiver appointed in a proceeding under the statute, and said: "An action against a corporation, under Gen.St.1878, c. 76, is in the nature of an action to wind up its affairs, to collect and convert all its assets, and appropriate them ratably among creditors, and to enforce the individual liability of stockholders and others to the extent of the deficiency of assets. As was said in Merchants' Nat. Bank. v. Bailey Mfg. Co., 34 Minn. 323, 327, 25 N.W. 639, 'it is an action not proceeding in the ordinary way of actions at law by trial of simple issues, judgment, and execution, but by the exercise of powers peculiar to the former courts of chancery.' The proceedings are susceptible of being moulded into almost any form necessary to accomplish their purpose of securing a full and final adjustment of the rights and liabilities of all parties growing out of the corporate business. During the progress of the proceedings, new parties may be admitted or brought in, and new issues introduced from time to time, as they become necessary for the final winding up of the affairs of the corporation, and the enforcement of all the rights of creditors."

In the case of Minneapolis Thresher M. Co. v. Langdon (1890) 44 Minn. 37, 46 N.W. 310, the court, speaking particularly of the powers of the receiver, said that he had substantially the same powers as an assignee in bankruptcy; and in the later case of St. Louis Car Company v. Stillwater Street Railway Company (1893) 53 Minn. 129, 54 N.W. 1064, the court again referred to the powers of the receiver as similar to those of an assignee in bankruptcy, and distinguished powers of a receiver under the statute from those ordinarily possessed by a receiver appointed in a suit of a mortgagee to foreclose a mortgage.

But these decisions all related to the question of the receiver's powers and functions and not to the question of the title which, on his appointment, he acquired to corporate assets. However, in State v. Red River Valley Elevator Company,[2] a later case, the Supreme Court of Minnesota clearly defined the scope of the statute in the latter respect. In that case the insolvent was a domestic elevator corporation owning 14 grain elevators situated on the right of way of the Great Northern Railroad Company in Polk county; the title of the land being in the railway company. In June, 1893, M. J. Forbes was appointed by the state court receiver of the property of the elevator company. The appointment was under the provisions of the statute we are discussing. Subsequently, the county in which two of the elevators were located assessed them, as personal property, against the receiver, and suit was brought against the receiver to collect the tax. In considering the question whether or not the assessment against the receiver was valid and proper, the court said: "Assuming, without deciding, that personal property of this character is assessable, not where it is situated, but where the 'owner or agent' resides, or, if the owner is a corporation, where its principal office or place of business is located, we are nevertheless of opinion that a receiver appointed by the court is not 'an owner or agent,' within the meaning of the statute, so as to give the property of the corporation a situs, for the purposes of taxation, wherever such receiver may happen to reside. It would be very remarkable, as well as unreasonable, if the situs of the property of a corporation for the purposes of taxation is dependent upon the mere accident of the residence of the person whom the court may appoint receiver of the corporate assets. * * * *A receiver is not the owner of the property intrusted to his custody. He is merely an officer of the court holding possession of the property for the benefit of those whom it may concern.* His possession is, in one sense, their possession, although in another sense the possession of the court. *His appointment does not in any way affect the right or title to the property, but merely changes the possession and control of it for the purposes of the receivership.* The

---

[2] 69 Minn. 131, 72 N.W. 60, 61.

receivership neither works a dissolution of the corporation nor deprives it of the title to its property. It merely delegates to the receiver, as an officer of the court, the power to take charge of it, and dispose of it for the benefit of those entitled to it, viz. the corporate creditors and stockholders." (Italics supplied.)

So far as we are able to determine by a careful check of the cases, the rule announced in the last-cited case remains unchanged in Minnesota. It is precisely that which obtains, generally speaking, in all the states; and we should be surprised to see it stated otherwise, for a receiver of a court is an officer of the court which appoints him, and the property in his hands is not, in a legal sense, in his possession. "It is in the possession of the court, whose appointee he is, by him as its officer." Taylor v. Sternberg, 293 U.S. 470, 472, 55 S.Ct. 260, 261, 79 L.Ed. 599. In the last-named case, Mr. Justice Sutherland, for the quoted language above, cites as authority Thompson v. Phenix Ins. Co., 136 U.S. 287, 297, 10 S.Ct. 1019, 1023, 34 L.Ed. 408. That was the case of a receiver appointed for a hotel by a state court in Oregon. As receiver, he took out a fire insurance policy on the receivership property. He subsequently resigned and another receiver was appointed in his place. When a loss occurred, the insurance company refused payment on the ground that there had been a change of title contrary to a clause of the policy prohibiting the transfer of title to the property while insured. The Supreme Court held that a change of receivers would not work a change in either title or possession. Speaking for the court, Mr. Justice Harlan said: "The title to property in the hands of a receiver is not in him, but in those for whose benefit he holds it. Nor in a legal sense is the property in his possession. It is in the possession of the court, by him as its officer."

As we have said, this is the general rule; and even in the case of a receiver appointed under the National Bankruptcy Act the title to the property does not pass to him, and no case that we know of holds that the mere appointment of a receiver vests title to the property of the insolvent in him. On the contrary, the title does not change; and if, as sometimes happens, the corporation is found at the expiration of the receivership to be able to pay its debts in full, and the suit is dismissed, its title to what is left remains unaffected by the proceeding; and this is also true in Minnesota where the appointment was made, as the Supreme Court of that State said in Arthur v. Willius, supra, by the exercise of powers "peculiar to the former courts of chancery." There, as elsewhere, the receiver is the arm of the court for the purpose of holding custody of the property in process of administration, and until ordered sold the title remains unaffected. The receiver is not, therefore, a transferee nor assignee of the property or assets of the corporation. He is, for the time being, the corporation, and when he sues or does any other act, it is in the place of, and in the right of, the corporation.

When, therefore, appellant as receiver filed with the Secretary his petition under the Act of 1929, he did so as the original claimant, the corporation, and not as assignee or transferee of the corporation. The Act of 1929 was passed to give the original claimant a right to review, and here appellant, as receiver, is the original claimant.

This is a wholly different situation from that which existed in the case of Ickes v. Cuyuna Mining & Investment Company. In that case, laying aside for the moment the fact that the transfer was made prior to the passage of the Act of 1929 when there was nothing to transfer, petitioner would have been only a transferee if the sale had occurred after passage of the act. And so we said that the claim it asserted was not a legal claim capable of transfer to it. In this case it is immaterial whether the claim is legal and transferable or merely gratuitous and nontransferable, because appellant does not claim as transferee, but as original claimant itself.

In this view, we hold that the court below was in error in dismissing the bill; and we do not pass upon the preliminary findings of the court prior to the dismissal, because none of those findings was made the subject of a final decree. We must, therefore, reverse and remand the case to the Supreme Court of the District, with instructions to reinstate the bill and to proceed with the petition in accordance with this opinion.

Reversed and remanded.