**FOGARTY v. UNITED STATES et al.**

Clv. No. 883.

United States District Court
D. Minnesota.

Aug. 28, 1948.

Rollo N. Chaffee, of Duluth, Minn., and George M. Shkoler and Blum & Jacobson, all of Chicago, Ill., for petitioner.

Victor E. Anderson, U. S. Atty., for Minnesota and James J. Giblin, Asst. U. S. Atty., both of St. Paul, Minn., and Hubert H. Margolies, Atty., Dept. of Justice, of Washington, D. C., for respondents.

BELL, District Judge.

The petitioner as Trustee in Bankruptcy, prior to VJ–day, had asserted various claims against the Navy Department of the United States on contracts NOs 91957, NObs-147, NXs 3309 and supplements thereto for the construction of submarine chasers and plane rearming boats as contained in invoices submitted to the Department, and the Department had asserted claims against the petitioner. These parties entered into an agreement February 20, 1945, compromising and settling this controversy and the agreement was authorized and approved by this Court. Some of the work furnished by the bankrupt was incomplete and defective and the claims were wholly unliquidated. As stated in the agreement "many of said amounts were unliquidated and therefore the net balance with respect to each contract and the net balance with respect to all transactions between the Government and the Contractor and the Government and the Trustee were not known to the Government or to the Trustee." However, it was agreed that the Department should pay petitioner approximately $16,000. The petitioner received payment. The agreement provided: "The Trustee, for himself, in his capacity as trustee, for his successors, and on behalf of the Contractor, its successors and assigns, remises, releases and

forever discharges the Government, its officers, agent and employees * * * of and from all debts, dues, sums of money, accounts, reckonings, actions, proceedings, claims and demands whatsoever in law and in equity arising under or as a result of the aforesaid contracts and transactions."

The petitioner in February, 1947, filed his claim for relief with the Navy Department under the Act of August 7, 1946, 41 U.S. C.A. § 106 note, 60 Stat. 902. This claim was denied by the Navy Department War Contract Relief Board on July 3, 1947, on the ground that the settlement agreement on February 20, 1945, constituted final action within the. meaning of paragraph 204 of Executive Order Oct. 5, 1946, 9786, 11 F.R. 11553 providing that "no claim shall be considered if final action with respect thereto was taken on or before" August 14, 1945, regardless of whether the invoices were written requests for relief with respect to losses. This action then was commenced for $328,-804.42 on December 1, 1947, under the Act of August 7, 1946.

The respondents moved to dismiss the complaint and for summary judgment on the grounds that the petitioner had not filed a written request for relief from losses with the Navy Department by August 14, 1945, as required by Section 3 of said act; that the settlement agreement between the petitioner and the Navy Department constituted final action within the purview of paragraph 204 of Executive Order 9786 and notwithstanding paragraph 204 the agreement of February 20, 1945, barred relief. The motion to dismiss in, effect was withdrawn. Consequently, the motion for a summary judgment will be given consideration herein.

Respondents also objected that suit could not be maintained against the United States (See United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058) and that the complaint was jurisdictionally defective and subject to motion to dismiss for failing to include in the complaint the allegation that the plaintiff had filed a written request for relief from losses with the Navy Department by August 14, 1945. These objections in effect were waived by respondents at the hearing. Such defects in the complaint, of course, might have been cured by amendment. It is unnecessary to pass on these contentions of the respondents since the motion for summary judgment in the opinion of this Court must be sustained on other grounds.

The Court now is concerned with issues as follows: (1) Whether petitioner's claim under the Act of August 7, 1946, submitted to the Court on April 2, 1948, discloses any written request for relief from losses filed with the Navy Department by August 14, 1945; (2) The validity of paragraph 204 of Executive Order 9786; and (3) Whether the agreement of February 20, 1945, bars the maintenance of this suit.

### Was a request for relief filed?

Section 3 of the Act of August 7, 1946, provides "Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945 * * *."

■ Congress under the Act of August 7, 1946, intended to limit consideration to a request for relief from loss under the First War Powers Act which was undetermined on August 14, 1945. The copies of alleged requests for relief from losses submitted by the petitioner as a part of his claim under the Act of August 7, 1946 in compliance with paragraph 202(e) of Executive Order 9786 were merely invoices that had been submitted to two Navy bureaus (The Bureau of Supplies and Accounts and the Bureau of Ships) for sums in addition to the stated contract prices for the contracts involved in the claim; that is, for extras under the contract, and a claim for allegedly requisitioned property. The invoices contained nothing to identify them as requests for relief from losses and as applications for First War Powers Act relief rather than for extras under the contract. Obviously a contractor may present claims for extras without representing either that he sustained a loss or that he seeks relief from a loss. The word "losses" was conspicuously missing. The documents now relied on by petitioner were invoices for money claimed under the contracts. They are not written re-

quests for relief from losses within the meaning of the act. As for the petition, Requisition Navy 120, dated July 23, 1943, on which petitioner relies, it is not a claim for *losses* in the performance of a *contract for furnishing work, supplies or services to a war agency* (Act of August 7, 1946, Section 1) but is a claim to compensation for requisitioned property in the absence of a contract and demands $35,-466 as the fair and reasonable value, and $6,125.39 for the care and conservation of property.

It is not sufficient that a request for some sort of relief was filed. A request for relief from a loss must definitely be a request for an amendment to a contract without consideration under the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq. The absence from the claim filed under the Act of August 7, 1946, of any request for relief from losses bars relief. United States ex rel. Tungsten Reef Mines Co. v. Ickes, 66 App.D.C. 3, 84 F.2d 257; Crimora Managanese Corporation et al. v. Wilbur, 60 App.D.C., 55, 47 F.2d 417, 421, certiorari denied 283 U.S. 861, 51 S.Ct. 654, 75 L.Ed. 1466; Marshall v. Wilbur, 60 App.D.C. 59, 47 F.2d 421, 422, certiorari denied 283 U.S. 861, 51 S.Ct. 654, 75 L.Ed. 1466. On May 25, 1948, in Jardine Mining Co. v. R. F. C., District Court of the United States for the District of Columbia, Civil Number 2843-47,[1] Justice Letts entered summary judgment in favor of defendant in a suit under the Act of August 7, 1946, for the reason, inter alia, that plaintiff had failed to file a written request for a relief from losses as required by Section 3 of the Act, since claims for relief under the contract were not requests for relief from losses under the First War Powers Act and the plaintiff neither adverted to any specific losses nor requested First War Powers Act relief. In the case at bar a request for a relief was not filed as required by Section 3 of the Act of August 7, 1946, and paragraph 204 of Executive Order 9786.

### Validity of Paragraph 204, Executive Order 9786.

The petitioner has attacked the validity of the President's regulations (Executive Order 9786) and particularly paragraph 204 thereof. If this paragraph is valid, it is imperative that the motion for summary judgment must be granted. It is proper here to observe that the view of Justice Letts, United States District Court for the District of Columbia, in his order of May 25, 1948, in Jardine Mining Company v. R. F. C. is more acceptable than the opinion of Justice Holtzoff, United States District Court for the District of Columbia, of June 25, 1948, in Warner Construction Company v. Krug and the United States, 80 F.Supp. 81.

The Act of August 7, 1946, was intended for the benefit of contractors who had filed claims for relief under the First War Powers Act prior to VJ–day which had not been acted on before that date, and which were not considered after VJ–day because of the War Department's interpretation that the power to grant relief under the First War Powers Act had lapsed as it then was unable to find that allowance would facilitate the prosecution of the war. In other words, the war had ended. Claimants filing before VJ–day who were unable to secure action on their claims solely because of delay in processing were thought to be in an inequitable position as compared to claimants who had succeeded in obtaining a ruling by VJ–day. The act had the limited objective of repairing the injustice whereby some claims might not have been considered on their merits. It was an equalization device. Those whose claims had already been considered were not the objects of Congressional solicitude; their position was not to be improved but was to constitute the yardstick by which the equity of claims which had not been processed by VJ–day might be appraised.

Obviously the subject matter of the act was gratuity legislation, Work v. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561; Nelson v. Ickes, 72 App.D.C. 217, 113 F.2d 515; Ickes v. Cuyuna Mining & Investment Co., 63 App.D.C. 91, 69 F.2d 662, certiorari denied 293 U.S. 562, 55 S.Ct. 73, 79 L.Ed. 662; Grover v. Merritt Development Company, D.C.Minn., 47 F.Supp. 309. To effectuate its objectives a large measure of discretion was vested in the President who was specifically authorized in Section I to

---

[1] No opinion filed.

issue his regulations within sixty days from the approval of the act. In compliance with this authorization the President promulgated Executive Order 9786. In the light of the nature of the legislation and its history, the regulations are in conformity with the purpose of the act and do not conflict with it; to the contrary they affirmatively make it workable. United States v. Antikamnia Chemical Co., 231 U.S. 654, 34 S.Ct. 222, 58 L.Ed. 419.

The legislative intent is revealed by the committee reports (S.Rept. 1669, 79th Cong., 2nd Session; H.Rept. 2576, 79th Cong., 2nd Session) accompanying S. 1477, 79th Congress, which became the Act of August 7, 1946. The purpose is explained as follows: *"This bill, as amended, would afford financial relief to those contractors who suffered losses in the performance of war contracts in those cases where the claims would have received favorable consideration under the First War Powers Act and Executive Order No. 9001 if action had been taken by the Government prior to the capitulation of the Japanese Government.* However, upon the capitulation, the position was taken by certain departments and agencies of the Government involved, that no relief should be granted under the authority which then existed, unless the action was required in order to insure continued production necessary to meet post VJ–day requirements. This was on the basis that the First War Powers Act was enacted to aid in the successful prosecution of the war and not as an aid to the contractors. As a result, a number of claims which were in process at the time of the surrender of the Japanese Government or which had not been presented prior to such time, were denied even though the facts in a particular case would have justified favorable action if such action has been taken prior to surrender." (Underscoring supplied.)

Insistence that the claims would have received favorable action under the First War Powers Act had there been a ruling prior to VJ–day accompanies the entire course of S. 1477 through Congress. This is revealed by the statement of Senator Lucas in introducing S. 1477 on October 11, 1945, 91 Congressional Record 9564;

the statements of Senators Lucas and McCarran on the floor July 16, 1946, 92 Congressional Record 9092. At the hearing on S. 1477 before the Senate Subcommittee of the Judiciary at page 17 Senator Lucas testified that the purpose of the bill was "Nothing more or less than an amendment to the original act, which would give the War Department the power to do the very thing which they claim they did not have the power to do." That the act was substantially a continuance of Section 201 of the First War Powers Act, 50 U.S.C.A. Appendix, § 611, is reinforced by the limitation of relief to agencies authorized to modify contracts under Section 201 and to losses from which request for relief have been filed by VJ–day.

As a continuance of the First War Powers Act, which empowered the President to authorize agencies and departments to modify contracts without consideration, it was only natural that the act of August 7, 1946, should confer broad authority on the President. Delegation of rule making power to the President rather than to the heads of departments highlights the extent of the discretion delegated and the essentially legislative character of the power to issue regulations. The bestowal of such authority must be construed to convey a measure of power adequate to the accomplishment of the purpose. United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259; Commissioner v. South Texas Lumber Company, 333 U.S. 496, 68 S.Ct. 695. It was appropriate for the President to include in his regulations a provision denying a relief on any claim where final action had been taken by VJ–day. Under the circumstances the regulations in effect were a part and parcel of the legislation. To exercise them separate and apart from the act eliminates an organic part of it. Without the authority of the President to make such regulations and thus to complete its broad provisions, it is doubtful if the legislation would have been enacted or approved. Nullification of Paragraph 204 removed limitations and controls Congress affixed to this legislation and produces a statute radically different from that intended by the Act of August 7, 1946. In dealing with such legislation the

courts will not violate the intention of Congress by a pretense of adhering to the letter of the law. Central Hanover Bank & Trust Co. v. Commissioner, 2 Cir., 159 F.2d 167. The legislation does not so plainly and unambiguously support petitioner's contention as to preclude resort to appropriate material for ascertaining the legislative intention and the interpretation of the act. The use of materials here to ascertain the legislative intent seems appropriate. United States v. American Trucking Associations, Inc. et al., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356; Harrison v. Northern Trust Company, 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407; Mitchell v. Cohen, 333 U.S. 411, 67 S.Ct. 518.

█ Legislative history leaves no doubt as to the meaning of the act nor as to the validity of the regulations; the President's regulations are integrated into the act and limit departmental, agency, and court allowance alike. Even if petitioner had filed a written request for relief from losses, his recovery under the Act of August 7, 1946, Section 6, might not exceed the amount allowable by the department or agency concerned under the terms of the act, including the regulations. The petitioner's contention of invalidity is not supported by the decisions he cites dealing with regulations at variance with the terms of the statute and promulgated by inferior officers. The Act of August 7, 1946, was gratuity legislation, a broad discretion was delegated, and the purposes of the regulations are entirely consistent with the act. The discretion in issuing regulations depends to some extent on the subject matter. Hamilton v. Dillin, 21 Wall. 73, 22 L.Ed. 528. Here the subject matter was open-end legislation relating to a gratuity. Work v. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561.

█ The exception in the terminal clause of Section 3 of the Act of August 7, 1946, "but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this act" obviously refers to unilateral determinations. Illinois Surety Co. v. United States To The Use of Peeler et al., Trading As Faith Granite Company, 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609, and excludes bilateral consensual arrangements. Apart from this consideration the exception clause, read in the light of the manifest purpose of the act (to extend the war powers act for the benefit of contractors whose claims had not been processed by August 14, 1945) encompassed the following situations: (1) where a contract had already been amended under the First War Powers Act, if performance had continued, and a new request for further relief was under advisement on VJ-day, further consideration might be given; (2) where the department had taken final action on only part of a request, it might proceed to dispose of the whole claim; and (3) a contractor with a number of contracts might have his pending requests considered even though final action had been taken under the First War Powers Act or the Contract Settlement Act of 1944, 41 U.S.C.A. § 101 et seq., on his other contracts.

█ "Further relief otherwise allowable" means consistent with the basic objectives of the act. It does not revive requests which had been disposed of by VJ-day. In the words of the Navy Department War Contracts Relief Board in United Concrete Form Products Company, September 29, 1947, C.C.H. Government Contracts Reporter, 4 C.C.F. Par. 60449: "In order for a claim to be otherwise allowable the right to further relief under the First War Powers Act as to certain portions of the claim would have had to be specifically reserved for further consideration by the terms of the settlement itself, or a new request for relief, upon which final action was not taken before August 14, 1945, would have had to be submitted. The statute contains no authority for a department or agency of the government to revive a request for relief upon which final action was taken before August 14, 1945. However, had a new and timely second request been submitted, the previous settlement under the First War Powers Act of the first request would not operate to preclude further relief otherwise allowable under the act based on the second request." The agreement of February 20, 1945, was not entered

into by the Navy Department under the authority of either the First War Powers Act or the Contract Settlement Act, for no reference to either source of authority is made therein. The practice of government agencies invoking such special statutory authority was to recite formally in the contract that such authority was being exercised. If the First War Powers Act relief had been requested or had been granted in the agreement of February 20, 1945, the petitioner would be in no stronger position; because at no point in the consideration of S. 1477 was it suggested that contractors who had asserted First War Powers Act claims, and who had been granted relief, might elect to look upon previous compromises as payments on account, and sue under the act for the difference between the maximum estimate of their claims or net losses and the payments they had theretofore accepted as payment in full.

In the Hearings on S. 1477, before a Subcommittee of the Senate Committee on the Judiciary, 79th Cong., 2d Sess., the following colloquy between Senator McCarran, Chairman of the Subcommittee on S. 1477 and J. Henry Neale, General Counsel for the Navy Department, at pp. 64–65, demonstrates that the Act of August 7, 1946, was not intended to resurrect previously considered claims, but was designed to eliminate VJ–day as a barrier to the consideration of claims pending undisposed of on that day:

"The Chairman. I do not understand that the idea of the bill is to direct payment of something that was turned down on the merits.

"Mr. Neale. I quite understand, Senator.

"The Chairman. I do not think the Congress of the United States will want to inject itself into a judgment on the merits, on the facts. I think the Congress, if it will want to do anything, will want to so clarify the law that as to the just and equitable case that seems to be precluded from judgment by reason of the condition that has arisen, the condition will be removed so that its merits may be considered. I think that is all the Congress will want to do."

▆ In attacking par. 204 of Executive Order 9786, petitioner has patently misread Section 2(a) of the Act as guaranteeing contractors against losses sustained without fault or negligence, whereas that section plainly fixes a *ceiling* or maximum on the amount of the relief allowable and is not in any sense a mandate to award the full amount of the losses. Section 2 itself, the title of the act, "An Act to authorize relief in certain cases where work, supplies, or services have been furnished for the Government under contracts during the war", the direction that the court sit as a court of equity to determine the equities of the claim, and the legislative history, prove that no such guarantee against losses was intended or given all war contractors free from fault or negligence. Moreover "A liability in any case is not to be imposed upon a Government without clear words * * * and where, as here, the liability would amount to great sums, only the plainest language could warrant a Court in taking it to be imposed. * * *" Pine Hill Coal Co., Inc. v. United States, 259 U.S. 191, 196, 42 S.Ct. 482, 483, 66 L.Ed. 894; cf. United States v. Zazove, 68 S.Ct. 1284, 1291.

Effect of settlement agreement.

The Inland Waterways, Inc. had its corporate birth during the war and was organized for the purpose of obtaining contracts with the government to construct submarine chasers and plane rearming boats. It was financed with government funds. In a comparatively brief period financial difficulties were encountered and a proceeding was commenced under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. A few ships had been built and several were in the course of construction. Much of the work was incomplete and defective. Labor claims having priority under the law were pressing. Creditors and all parties concerned were desirous of effecting a settlement with the government for the funds claimed due the bankrupt under the contracts.

On February 20, 1945, the date the settlement agreement was executed, the First War Powers Act was in effect. The petitioner presented his claims for the money alleged due the contractor at that time. Presumably all claims were presented and considered. If the petitioner had any claims

for losses naturally he then would have made them known. In any event a settlement was made and the petitioner, as a trustee in bankruptcy, on behalf of the contractor and with the authority and approval of the court executed an instrument in writing releasing and forever discharging the government " * * * of and from all debts, dues, sums of money, accounts, reckonings, actions, proceedings, claims, and demands whatsoever in law and in equity arising under or as a result of the aforesaid contracts and transactions". This release was as far reaching and as sweeping in its terms as language could make it. It was executed by parties perfectly capable of contracting, knowing the facts, and dealing at arm's length with each other. It is clear, unambiguous, has not been impeached, rescinded, changed or modified in any respect. The matters now submitted as requests for losses were made integral parts of the settlement agreement. At the time of the execution of the settlement contract the First War Powers Act was in effect, but no relief could then have been had under it. The Act of August 7, 1946, conferred no greater rights on the petitioner. The respondents in this case were not bound by any duty, obligation or contract on which the act could operate, or authorize the petitioner to make a request for losses. Congress was dealing with existing, outstanding, valid claims that had not been paid or settled, situations where claimants might be denied a day in court or a chance to be heard. Congress had no intention of renewing a claim that had been settled and completely terminated by the voluntary act of the parties concerned.

The agreement of February 20, 1945, specifically recites that "many of said amounts were unliquidated and therefore the net balance with respect to each contract and the net balance with respect to all transactions between the government and the contractor and the government and the trustee were not known to the government or to the trustee." Thus the agreement compromised unliquidated claims and was not a settlement in the sense of a unilateral administrative determination of the amount due. 31 U.S.C.A. §§ 71, 72; Illinois Surety Company v. United States, supra. The legislative history is barren of any suggestion that a binding and valid compromise, resulting from negotiations of the interested parties supported by a consideration on both sides followed by an exchange of releases may be disregarded by claimants to the gratuity extended to the Act of August 7, 1946. Under Section 6, the court is directed to sit as a court of equity; to regard petitioner as still having requests for relief from losses outstanding on VJ-day and require a determination by the court, despite the absoluteness of the terms the agreement, that it was tentative, and inconclusive as to the petitioner, but final and conclusive as to the United States, does not accord with principles of equity. The formality and conclusiveness of a settlement by agreement are essential presuppositions of the Contract Settlement Act, 41 U.S.C.A. § 106 (c) and (e) and Executive Order 9786 paragraphs 308 and 309. The petitioners release was executed after full consideration of the relative advantages and after the usual give and take negotiations with respect to unliquidated claims. Congress and the officials of the government may desire to exercise the greatest liberalities in dealing with the claims of contractors and courts may extend the principles of equity to the breaking point, but there can be no justification for recognizing the claims for losses presented in this case.

This Court is of the opinion that respondents are entitled to a judgment under the law for the reasons: (1) the petitioner failed to file any written request for relief for losses with the Navy Department on or before August 14, 1945; (2) that, even if petitioner had filed a written request for relief with respect to losses on or before August 14, 1945, final action on such request had been taken prior to August 14, 1945, so that relief is barred by the provisions of paragraph 204 of Executive Order 9786; and (3) that petitioner's compromise on February 20, 1945, of all claims and their release bar relief and all claims held by him for the Inland Waterways, Inc., the bankrupt estate.