# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31306 c/w 14-30807

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2014

Lyle W. Cayce
Clerk

CELTIC MARINE CORPORATION,

Plaintiff - Appellee

v.

JAMES C. JUSTICE COMPANIES, INCORPORATED,

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-3005

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

This consolidated appeal concerns a series of disputes involving contracts between Celtic Marine Corporation and Kentucky Fuel Corporation. Celtic arranged with barge operators to transport Kentucky Fuel's metallurgical coal along inland rivers. James C. Justice Companies, Inc. is Kentucky Fuel's guarantor. The district court ordered Justice to pay contract damages and attorneys' fees to Celtic. We AFFIRM except as to the rate of post-judgment interest. The federal statutory rate should be paid.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31306 c/w 14-30807

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, Celtic brought suit against Justice pursuant to an annual service agreement and related contracts between Kentucky Fuel and Celtic. Under the agreements, Celtic arranged for the transport of coal on barges. Celtic did not join Kentucky Fuel, which has never been a party to this litigation. Celtic in its complaint stated that Justice was liable for all of Kentucky Fuel's obligations under the relevant agreements. Though Justice in its answer denied its guarantor obligations, it no longer does so. Celtic alleged that neither Kentucky Fuel nor its guarantor Justice had fully paid Celtic under the contracts. It further claimed that cargo remained loaded on barges that were incurring demurrage and cover and cleaning charges.

In February 2012, the parties entered into a settlement agreement. Also in 2012, the parties entered into an annual service agreement and two spot contracts (collectively the "2012 Contracts").[1] The district court dismissed the case, subject to the right of a party to seek enforcement of the settlement. In October 2012, upon Justice's noncompliance with the February Settlement, the parties entered into a second settlement agreement which required Justice to make four payments on specific dates totaling $2.2 million. It also contained an acceleration clause which upon default allowed Celtic to seek payment for all amounts owed under the February Settlement and the 2012 Contracts.

In January 2013, on the day after Justice made the final payment five weeks late, Celtic filed a motion to reopen the suit under Rule 60(b)(6) and a motion for summary judgment to enforce the February Settlement. In March, the district court granted the Rule 60(b)(6) motion, reopening the litigation and

---

[1] The record at times refers to one spot contract and at other times to two spot contracts. The number is not relevant to our decision.

No. 13-31306 c/w 14-30807

allowing Celtic to assert additional claims that had arisen from Justice's breaches of the settlement agreements.  It also granted Celtic's motion for summary judgment, holding that because of Justice's failure to make timely payments, the October Settlement itself provided that Celtic was entitled to all amounts due under the February Settlement and the 2012 Contracts.  Left open was how much Justice owed.  Justice appealed.  This court affirmed the grant of summary judgment but dismissed the appeal of the Rule 60(b)(6) motion for want of jurisdiction.  *See Celtic Marine Corp. v. James C. Justice Co. Inc.*, 760 F.3d 477 (5th Cir. 2014).

The district court entered additional orders in September and November 2013, setting but then adjusting amounts owed for some of the damages.  Justice appealed again.  In March 2014, the district court entered an "Amended Partial Final Judgment" awarding most of the requested damages to Celtic.  It did not award the outstanding demurrage or cover and cleaning damages; it expressly found that the "parties' rights to further amounts owed for demurrage, cover charges [and] barge cleaning fees" were not prejudiced by the entry of the judgment.  Justice filed an amended notice of appeal from that decision.  In April, Celtic filed a second motion for summary judgment on the remaining amounts.  On May 28, the district court granted the motion in part.  It held that Celtic was entitled to recover all outstanding demurrage and cover and cleaning charges.  Interest on invoiced sums was "to accrue until paid" at the contractual rate of 1.5% per month.  Justice appealed again.  We have consolidated the appeals.

## DISCUSSION

"We review a district court's decision to grant or deny relief under [Federal Rule of Civil Procedure] 60(b) for abuse of discretion."  *Perez v. Stephens*, 745 F.3d 174, 177 (5th Cir. 2014) (citation omitted).  "We review a

district court's grant of summary judgment de novo, applying the same legal standards as the district court." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 348 (5th Cir. 2007) (citation omitted).

We are considering two consolidated appeals. In the first appeal, Justice argued that the district court erred in designating its March 2014 judgment as a partial final judgment under Federal Rule of Civil Procedure 54(b). Because the entire case has now been resolved and is before us, this issue is moot. Justice also argued that the district court erred in allocating a portion of the $2.2 million it paid pursuant to the October Settlement to categories of damages that had not yet been determined to be recoverable. The district court later fully resolved those issues; therefore, this argument also is now academic.

The three issues raised in the appeal from the May 2014 judgment, which the parties agree completely disposed of all remaining disputes, are the following: (1) the district court could not both enforce the October Settlement and allow Celtic to reopen the underlying case to assert claims arising out of the breach of the agreements between the parties; (2) Celtic should not have been held entitled to demurrage, cover charges, and barge cleaning expenses; and (3) post-judgment interest should have been awarded only at the statutory rate. These issues are not moot, and we will address each in turn.

*1. Reopening Case through Celtic's Rule 60(b)(6) Motion*

Justice argues the district court erred in granting Celtic's Rule 60(b)(6) motion to vacate the prior dismissal and reopen the litigation.

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding[.]" FED. R. CIV. P. 60(b). "While Rule 60(b)(1-5) empowers the district court to grant relief because of a mistake, surprise, newly discovered evidence, fraud, or a void or

discharged judgment, 60(b)(6) permits vacatur for 'any other reason that justifies relief.'" *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013) (quoting FED. R. CIV. P. 60(b)(6)). "Clause (6) is a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quotation marks and citation omitted). "We are mindful that although final judgments should not lightly be disturbed, the rule should be liberally construed in order to achieve substantial justice." *Id.* at 305 (internal quotation marks and citation omitted).

Celtic sought to have the dismissal vacated and the litigation reopened not only to enforce the settlement but also to bring additional claims against Justice as a result of its breach. The district court granted the motion in March 2013. It held that the additional claims had "arisen as a result of Justice Co.'s failure to comply with the various settlement agreements in this case." The court held that reopening the litigation "serves the interests of judicial economy to have all of these claims asserted in one action . . . ." In addition, because it was unclear to the district court how much money Justice owed to Celtic, it held that "reopening this suit would provide both parties with a fair opportunity to present their respective accounts to the Court through motion practice, such that the Court can make a fully informed determination of the actual amount that Justice Co. owes Celtic Marine."

Justice does not so much argue that the district court lacked authority to assess the damages arising from the breach of the agreements as it argues that the district court's order "commingle[d]" the right to reopen to enforce a settlement and the right to reopen to assert additional claims. We do not draw the procedural lines in that way. By not complying with the payment deadlines in the October Settlement, Justice exposed itself to having the compromises of

that second settlement set aside, and the terms of the February Settlement and 2012 Contracts reinstated. The district court explained its reasoning in its March 2013 order. The October Settlement by its own terms provided that if the payments were not timely made, the February Settlement and 2012 Contracts would remain in effect. Reading the two settlements consistently, the district court held that enforcing the breached second settlement meant that Justice had to pay the additional damage amounts provided for in the February Settlement and those damages arising from the 2012 Contracts. Granting the Rule 60(b)(6) motion reopened the suit in order for the effects of Justice's breach of the October Settlement to be litigated.

"A district court abuses its discretion [when deciding a Rule 60(b) motion] if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Perez*, 745 F.3d at 177 (quotation marks and citation omitted). Such errors have not been pointed out in the district court's ruling. We conclude that the district court did not err in granting Celtic's Rule 60(b)(6) motion to reopen the litigation nor in granting Celtic leave to amend its complaint. "A district court should freely give leave to amend a complaint when justice so requires." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (citing FED. R. CIV. P. 15(a)(2)) (internal quotations marks omitted).

### 2. Demurrage and Cover and Cleaning Charges

Justice argues that the district court erred in granting summary judgment to Celtic on the demurrage and cover and cleaning charges because there is a genuine issue of material fact as to whether the charges are owed. It is not disputed that the agreements between the parties provided that

No. 13-31306 c/w 14-30807

Kentucky Fuel was to pay Celtic for demurrage.  The question is whether any fault by Celtic in causing delay or damage can affect the amount owed.

Justice argues that the demurrage and cover and cleaning charges are a result of (1) damaged cargo that were due to Celtic's negligent hiring of barge owners and operators, (2) Celtic's failure to discover deficiencies in the operating and maintenance procedures of those it hired, and (3) Celtic's failure to ensure that the barge owners and operators exercised proper care in handling the coal and maintaining the load barges.  Justice contends this creates a genuine issue of material fact as to whether the damages are owed to Celtic.  If so, then summary judgment was improper.[2]

The contracts between Celtic and Kentucky Fuel foreclose liability on the part of Celtic.  The contracts refer to a "Carrier," which was a barge operator whom Celtic separately contracted with to transport the coal.  Celtic's original complaint identified two separate barge operators. Liabilities for damages during barge operations are set out in the following provisions:

> **CARRIER LIABILITY.**  Carrier shall be liable for any loss of or damage to the shipment herein described . . . .  Carrier shall not be liable for lost profits or other consequential damages under any circumstances.  It is agreed and understood by the parties to this Contract that Seller [Celtic] is not the Carrier and assumes no responsibility as Carrier.  Accordingly, Buyer [Kentucky Fuel] agrees that it shall not have any right of recovery and shall not file suit or initiate legal action against Seller for any damages or losses incurred due to Carrier's fault, breach of Contract, breach of warranty or workmanlike performance, or unseaworthiness of Carrier's barge(s). […]

---

[2] Kentucky Fuel sued Celtic, in a separate case, on these negligence claims.  The district court granted summary judgment to Celtic and dismissed the negligence claims with prejudice. *Kentucky Fuel Corp. v. Celtic Marine Corp.*, No. 13-6538, 2014 WL 2200687 (E.D. La. May 27, 2014).

No. 13-31306 c/w 14-30807

> **CARGO:**  Seller [Celtic] does not have exact knowledge of the quantity, quality, condition, contents or value of the Cargo.  No claims for variance of weight due to shrinkage shall be allowed. *** Seller [Celtic] shall not be liable for rust, oxidation or any damage to any cargo arising out of, related to, or due to inherent vice, condensation, or atmospheric conditions.
>
> **CLEANING AND ACCEPTANCE:**  Seller [Celtic] shall tender barges of a type and condition suitable for the cargo to be carried. Loading of the barges shall constitute Buyer's [Kentucky Fuel's] acceptance of the condition and suitability of the barges for the intended cargo. […]
>
> **LOADING AND UNLOADING:**  Proper loading of cargo shall be Buyer's [Kentucky Fuel's] responsibility . . . . […]

These provisions disclaim any liability for Celtic for loss or damage to the cargo while in the hands of the Carrier.  Instead, the "Carrier shall be liable for any loss of or damage to the shipment."

The settlements provide that they are to "be governed, construed, and enforced under the laws of the State of Louisiana."  The contracts state that they are to be governed by the "general maritime law of the United States"; in the event "the choice of the general maritime law is deemed unenforceable," Louisiana law applies.  Maritime contractual disputes are generally resolved under the common law of contracts.  *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011).  A maritime contract "limiting liability will be upheld so long as the parties to the contract have more or less equal bargaining strength."  *Coastal Iron Works, Inc. v. Petty Ray Geophysical,* 783 F.2d 577, 583 (5th Cir. 1986) (citation omitted).  Justice does not contend the parties were of unequal bargaining strength.

Under the contract, Kentucky Fuel was responsible for the loading of the barges and, upon loading, accepted responsibility for the condition and suitability of the barges.  We find no genuine issue of material fact as to

whether Justice, as Kentucky Fuel's guarantor, owes the demurrage and cover and cleaning charges to Celtic. It does.

### 3. Post-Judgment Interest

Justice argues that the district court erred in awarding Celtic interest on all invoiced sums at the contractual rate of 1.5% "to accrue until paid." An "interest award is a question of law and is reviewed *de novo*." *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 435 (5th Cir. 2003) (citation omitted).

> In its May 28, 2014 judgment, the district court awarded Celtic
>
> interest on all invoiced sums arising from the February Service Agreement, the [2012 Contracts] and the October Settlement Agreement . . . . Such interest will accrue at a rate of 1.5% and will continue to accrue until paid.

The invoices sent by Celtic to Justice provide that "[i]nvoices not paid within the stated terms [will] be charged 1.5% per month." Similarly, the contracts between the parties state that "all freight, demurrage and other charges shall be subject to an interest charge of 1-1/2% per month beginning on the first day after the due date of invoice."

Justice accepts that the parties contractually agreed to an interest rate of 1.5% on freight, demurrage, and invoiced sums. It argues, though, that interest that accrues beyond the date of the judgment is post-judgment interest which must be awarded at the federal statutory rate, not a contractual rate.

"The post-judgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)." *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594 (5th Cir. 2006). "Postjudgment interest is not discretionary but 'shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

No. 13-31306 c/w 14-30807

Treasury yield[.]'" *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456-57 (5th Cir. 2013) (quoting 28 U.S.C. § 1961(a)).  A contract can validly establish a different rate, but it "must do so using clear, unambiguous, and unequivocal language, otherwise the contract merely merges into the judgment." *Id.* at 458-59 (internal quotation marks and citations omitted).

None of the relevant contracts or invoices explicitly references post-judgment interest.  The provision that 1.5% interest is to be paid on all sums owed is not "clear, unambiguous, and unequivocal" that it applies to unpaid post-judgment amounts.  It therefore is not sufficient to contract around the statutory post-judgment rate.  For example, we have held that parties did not "clearly, unambiguously, and unequivocally mean[] to refer to postjudgment interest except where they have expressly referred to postjudgment interest." *Id.* at 459.  By contrast, we affirmed a district court's award of post-judgment interest at 9% where the contract stated "[a]ll past due interest and/or principal shall bear interest from maturity until paid, *both before and after judgment*, at the rate of 9% per annum." *Hymel v. UNC, Inc.*, 994 F.2d 260, 265-66 (5th Cir. 1993) (emphasis in original) (quotation marks omitted).

We conclude that the rate of interest on "all invoiced sums arising from the February Service Agreement, the [2012 Contracts] and the October Settlement Agreement" awarded in the May 28, 2014 judgment is the contractual rate of 1.5% per month until the date of the entry of judgment, and the federal statutory post-judgment rate thereafter.

AFFIRMED as modified, and REMANDED for recalculation of interest.

10