### HOWARD INDUSTRIES, Inc. v. UNITED STATES.

#### No. 48874.

United States Court of Claims.

April 4, 1949.

WHITAKER, Judge, dissenting.

———————♦———————

Raoul Berger, of Washington, D. C. (Gottlieb, Schwartz & Friedman, of Chicago, Ill., on the brief), for plaintiff.

Mary K. Fagan, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen. (Edgar T. Fell and Robert E. Mitchell, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

HOWELL, Judge.

The defendant moves to dismiss the petition.

Plaintiff's action is brought under Public Law 657, 79th Cong., 2d Sess., Ch. 864, 60 Stat. 902, 41 U.S.C.A. § 106 note, known as the Lucas Act, which authorizes relief for war contractors who suffered net losses in the performance of Government contracts between September 16, 1940, and August 14, 1945. The case was originally filed in the District Court of the United States for the District of Columbia and was transferred to this court pursuant to Section 6 of the Lucas Act, as amended June 25, 1948, § 37, Public Law 773, 80th Congress, 62 Stat. 869, 41 U.S.C.A. § 106 note.

Plaintiff had three prime contracts with the Navy Department dated October 24, 1943, February 27, 1943, April 3, 1944, and modifications and changes thereto, which contracts were consolidated into one contract Noa (s) 4395 dated July 31, 1944, and one contract with the War Department. Plaintiff alleges that in the performance of such contracts it incurred a net loss of $235,882.34 through no fault or negligence of its own and that prior to August 14, 1945, written requests for relief concerning the losses were addressed to the Navy Department. Plaintiff further alleges that pursuant to Public Law 657 and Executive Order 9786 Oct. 5, 1946,[1] it filed with the Navy Department its claim for relief on

---

[1] 11 F.R. 11553; 3 CFR, 1946 Supp., 165.

February 7, 1947, within six months after the date of the approval of said act, which claim was denied in toto by that department acting through its War Contracts Relief Board. This determination was based mainly upon Paragraphs 204 and 307 of Executive Order 9786.

The defendant bases its motion to dismiss the petition on the following grounds:

"(1) that plaintiff did not have on file with the proper department or agency, on or before August 14, 1945, a written request for relief with respect to losses alleged in its complaint, as required by Section 3 of the Lucas Act, in that plaintiff's letters to the Navy Department, dated December 16, December 17, 1943, and May 28, 1944, attached to its petition, are the only documents that could be construed as 'requests for relief,' and that they are not the sort of requests for relief contemplated by the Lucas Act. In this connection, defendant argues that the Lucas Act is a mere extension of the First War Powers Act [2] and that only claims which might have been granted under that act can be considered under the Lucas Act, i. e., a request for an amendment to a contract without consideration;

"(2) that if the court should decide that plaintiff has filed proper 'requests for relief,' plaintiff's claim is barred by a settlement agreement of November 18, 1944, entered into voluntarily by plaintiff with the Government under the terms of the Contract Settlement Act of 1944,[3] and that therefore no request for relief under the First War Powers Act of 1941 was pending and undisposed of as of August 14, 1945."

Section 3 of the Lucas Act provides in part:

"Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, but a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act."

Section 2 of the act limits the amount of a claim to the *net loss* (less the amount of any relief granted subsequent to the establishment of such loss) on all war contracts and subcontracts of the claimant performed during the statutory period, and provides that consideration must be given to any action taken with respect to the contracts and subcontracts under the Contract Renegotiation Act,[4] the Contract Settlement Act of 1944, any relief granted under section 201 of the First War Powers Act, 1941, "or otherwise," and any relief proposed to be granted by any other department or agency under the Lucas Act.

We first consider the exact nature of the three letters purporting to be "requests for relief" as required by Section 3. Those letters related to the three Navy contracts here in issue, and requested a redetermination of the contract price because of an operating deficit, such redetermination to be made pursuant to the escalator clause of the contract.

Such a request for a redetermination of the contract price because of an operating deficit is, we believe, a request for relief with respect to losses incurred in the performance of the contracts. The Government does not dispute this fact, but contends that the relief requested in the letters was not the sort of relief that could have been granted under the First War Powers Act, Section 201, and that therefore it cannot be granted under the Lucas Act. The Navy Department had originally denied these requests for relief on the ground that the contemplated termination of the contracts for the convenience of the Government precluded the exercise of the Navy Department's authority under the First War Powers Act to amend contracts without consideration "to further the prosecution of the war." The Government then refers us to Paragraph 307 of Executive Order 9786 and states that since the contracting agency found that First War Powers Act relief from loss could not have

---

[2] 50 U.S.C.A.Appendix, § 611.
[3] 41 U.S.C.A. §§ 101–125.

[4] 50 U.S.C.A.Appendix, § 1191.

been granted, no relief may now be had under the Lucas Act. Paragraph 307 of the Executive Order provides in part as follows:

"Relief with respect to a particular loss claimed shall not be granted under the Act and these Regulations unless the war agency considering the claim finds * * * that relief would have been granted under the First War Powers Act, 1941, if final action with respect thereto had been taken by the war agency on or before August 14, 1945."

■ We cannot agree with the Government's contention that the Lucas Act is merely an extension of the First War Powers Act and that only those claims' that could have been allowed under that act may be considered under the Lucas Act. We shall examine paragraph 307, quoted above (which is one of the regulations issued pursuant to Section 1 of the Lucas Act) first in the light of the express terms of the act, and secondly in the light of the act's intent as expressed in its legislative history.

Section 201 of the First War Powers Act, 1941, provides that relief may be granted a war contractor by a war agency by entering into contracts or amendments or modifications of contracts *where the agency deems that such action would facilitate the prosecution of the war.* The Lucas Act does not require that the war agency make any such determination as a basis for relief. Section 1 of the Lucas Act provides that war agencies may grant a war contractor relief from losses incurred between September 16, 1940, and August 14, 1945, *where such losses were incurred without fault or negligence on the part of the contractor.* Further evidence that the Lucas Act provides broader relief than was contemplated by the First War Powers Act is found in the language of Section 2 directing that in determining the amount of a contractor's net losses, consideration shall be given to relief granted under the Contract Renegotiation Act, the Contract Settlement Act of 1944, the First War Powers

Act, or any other relief granted. Again, in section 3, the Lucas Act provides that prior settlements under the Contract Settlement Act of 1944 and under the First War Powers Act, 1941, shall not bar further relief under this act. In this connection, it should be noted that the Contract Settlement Act granted much broader relief than did the First War Powers Act and on an entirely different basis.

The legislative history of the Lucas Act [5] reveals that, as originally conceived, the act was intended to be merely an extension of the First War Powers Act. Certain war agencies had taken the position that the termination of hostilities on August 14, 1945, eliminated the basis for First War Powers Act relief because it was then no longer possible to make the requisite determination that the action authorized by the act would "facilitate the prosecution of the war." Other agencies took the opposite view, with the result that pending claims were considered by some war agencies, and were dismissed without consideration by others. As the hearings progressed, the committee noted that in many instances First War Powers Act relief which had been rendered had been far from adequate and had left war contractors with net losses on their over-all operations. Accordingly, it was decided to change the language of section 1 which originally authorized modification of contracts to "prevent a manifest injustice" (i. e., the situation where some war agencies continued to grant First War Powers Act relief after August 14, 1945, and some did not) to language authorizing the Government to "settle equitable claims of contractors * * * for losses (not including diminution of anticipated profits) incurred * * * without fault or negligence on their part in the performance of such contracts * * *." [6]

The legislative history of Section 3 of the Lucas Act, which we shall take up in connection with the Government's final ground for dismissal, is further evidence that the bill as finally enacted went beyond

[5] Hearings before Senate Judiciary Committee, S. 1477, April 12 and 13, 1946.

[6] Stephens-Brown, Inc. v. United States, D.C.1949, 81 F.Supp. 969, 970.

the mere extension of First War Powers Act relief.

■ We accordingly conclude that Paragraph 307 of Executive Order 9786 is a regulation unauthorized by the Lucas Act and is in direct conflict with the express terms of the act and with its intent as revealed in its legislative history. The Government's motion, insofar as it is based on this regulation, must therefore fail.

■ The Government next contends that if the court should decide, as we have, that plaintiff has filed a proper "request for relief" within the meaning of the Lucas Act, plaintiff's claim is barred by its settlement agreement of November 18, 1944, entered into voluntarily by plaintiff and the Government under the terms of the Contract Settlement Act of 1944. In this connection, defendant relies on paragraph 204 of Executive Order 9786 which provides as follows:

"No claim for loss under any contract or subcontract of a war agency shall be received or considered unless a written request for relief with respect thereto was filed with such war agency on or before August 14, 1945; and no claim shall be considered if final action with respect thereto was taken on or before that date."

The defendant concedes that at first blush this regulation may appear to conflict with the last phrase of Section 3 of the Lucas Act which provides that "a previous settlement under the First War Powers Act, 1941, or the Contract Settlement Act of 1944 shall not operate to preclude further relief otherwise allowable under this Act." The Government attempts to dissipate this apparent discrepancy by arguing that the word "settlement" is a word of art and means a *unilateral determination* by the Government and not a bilateral agreement such as the parties herein entered into under the Contract Settlement Act of 1944. This would mean that claims arising under either the First War Powers Act or the Contract Settlement Act that had been settled by bilateral agreement of the parties could not be considered under the Lu-

cas Act. Let us examine the practical results of such an interpretation. The regulation implementing the First War Powers Act, provided in part as follows:

"The War Department, the Navy Department * * * may by agreement modify or amend or settle claims under contracts heretofore or hereafter made, * * * and may enter into agreements with contractors, and/or obligors, modifying or releasing accrued obligations of any sort, * * * (Executive Order 9001, Title I, Par. 3)." [7]

This regulation clearly authorized settlements by bilateral agreements. The legislative history of the Lucas Act reveals that relief under the First War Powers Act was usually granted by such settlements, which, at least on their face, were bilateral agreements accompanied by signed releases on the part of the contractors. According to defendant's interpretation of the Lucas Act, and under the regulation implementing the act, all such agreements would constitute a bar to further relief.

The Contract Settlement Act of 1944 provided for the settlement of termination claims by bilateral agreement of the parties which was to be final and conclusive and from which no appeal was possible, or by unilateral determination of the contracting agency from which determination an appeal could be taken to this court or to the Appeal Board of the Office of Contract Settlement. Under the defendant's interpretation of the Lucas Act, the first type of settlement would constitute a bar to further relief while the second (the agency determination) would not. Inasmuch as the Contract Settlement Act itself provided for an appeal to the courts from the unilateral determination of the agency, further relief by the same means under the Lucas Act would seem to be superfluous, and denial of further relief after a bilateral agreement which could not be appealed under the Contract Settlement Act would leave the contractor exactly where he was before the Lucas Act was passed. With respect to the First War Powers Act relief, a contractor might seek further relief under the

---

[7] 6 F.R. 6787, 3 CFR, Cum.Supp., 1054, 1055, 50 U.S.C.A.Appendix, § 611 note.

Lucas Act only if his claim had been settled by a unilateral determination of the contracting agency, a course seldom followed.

In further support·of its contention that the word "settlement" as used in the Lucas Act means unilateral determination, the defendant refers us to the case of Illinois Surety Co. v. United States, 240 U.S. 214, 219, 36 S.Ct. 321, 323, 60 L.Ed. 609. We do not understand that case as supporting defendant's contention. In that case the Supreme Court held that for the purpose of determining the date from which a statute of limitations began to run (in connection with public transactions and accounts) the word "settlement" meant an administrative determination of the amount due and not "payment." In other words, the statute was held to start running on the date of the determination and not on the later date when payment was actually made. The court went on to say, however,

"We should not say, of course, that instances may not be found in which the word 'settlement' has been used in acts of Congress in other senses, or in the sense of 'payment'."

The word "settlement," as we have shown, was used in two senses in both the First War Powers Act and in the Contract Settlement Act, that is, settlement by unilateral agency determination, and settlement by bilateral agreement. The Lucas Act merely says that settlements (without qualification) under either or both acts shall not operate as a bar. From the plain language of the act, we can only conclude that the word "settlement" was intended to include both kinds of settlement provided for in the two acts mentioned in section 3.

In further support of its argument, defendant relies on the legislative history of section 3 of the Lucas Act. In that connection it is, we think, sufficient to point out that the Lucas Act as originally introduced contained the following provision:

"This section shall not be applicable to cases submitted under § 201 of the First War Powers Act, 1941, which have been finally disposed of under such section upon their merits prior to August 14, 1945."

As finally·enacted, the bill provided exactly to the contrary in Section 3, and yet the defendant asks us to read that section as though it contained the provision originally included and finally eliminated.[8] As the United States Court of Appeals, D.C. Cir., said in the case of Border Pipe Line Co. v. Federal Power Commission, 1948, 171 F.2d 149, 152:

"We cannot write into an act of Congress a provision which Congress affirmatively omitted."

Paragraph 204 of the Executive Order is merely a paraphrasing of the provision so omitted and is in direct conflict with the wording of the Lucas Act as enacted and with the intent revealed in its legislative ·history. Our conclusion is contrary to the decision of the District Court in the case of Fogarty v. United States, 80 F.Supp. 90, which case we have examined with care, but with which we find ourselves unable to agree.

Next, defendant takes comfort in the last few words of Section 3 reading "otherwise allowable under this Act" and contends that the relief requested by plaintiff is *not* otherwise allowable under this act. Defendant points out that section 6 of the Lucas Act provides that the court has jurisdiction to determine the amount, if any, to which a claimant may be equitably entitled *not exceeding the amount which might have been allowed by the department or agency concerned under the terms of the act.* The Navy Department, defendant tells us, was required by Section 1 of the Lucas Act, to proceed in accordance with the President's regulations and those regulations (paragraphs 204 and 307 of the Executive Order) made it mandatory that the Department disallow this claim because it was not such a claim as could have been relieved under the First War Powers Act, and also because it was barred by a prior settlement under the Contract Settlement Act of 1944. Therefore, the defendant concludes, since the Navy Department could not allow any amount to plaintiff, the relief

---

[8] Cf. Stephens-Brown, Inc., v. United States, supra, 81 F.Supp. at page 971.

requested was not "otherwise allowable under this Act." Inasmuch as we have determined that both regulations are invalid, we cannot find that the relief requested was of the sort not otherwise allowable under this Act.

█ In connection with this last ground for dismissal, the Government goes one step further and argues that in all events there must be on file as of August 14, 1945, a further request for relief pending and undisposed of and that plaintiff had not filed such further request following its settlement agreement of November 18, 1944, under the Contract Settlement Act of 1944. In this particular case the futility of filing such a further request for relief is obvious since the Contract Settlement Act of 1944 provided that settlement of termination claims by voluntary agreement was final and the Government was thus powerless to grant further relief. We cannot believe that when Congress enacted the Lucas Act in 1946 it intended that relief under that Act should be conditioned on a plaintiff's having filed a request for relief that the Government had, by statute, disabled itself from granting.

The requirement contained in Section 3 of the Lucas Act that claimants must have filed a written request for relief prior to August 14, 1945, merely means, we think that claimants must be able to show that they had made timely (that is, prior to August 14, 1945) protest to the contracting agencies concerning the losses now sued on and so have given those agencies an opportunity to either grant or deny their claims. This the plaintiff has done by the three letters referred to earlier in this decision.

From all of the above we conclude that the plaintiff has, by its pleadings, brought itself squarely within the provisions of the Lucas Act and the defendant's motion to dismiss the petition is accordingly overruled.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

In this case it appears that the claim filed by the contractor was a claim founded on a right which it claimed it had under the contract. I do not think this is the sort of claim contemplated by the Lucas Act. This authorizes those departments whe were authorized to modify contracts under the First War Powers Act to consider equitable claims of contractors for losses incurred in the performance of Government contracts. Section 3 of the Act provided that no claim should be considered unless a written request for "relief" had been filed with the department or agency on or before August 14, 1945. This contemplates, it seems to me, not the filing of a claim for an alleged right withheld but a claim for relief. A claim for relief is quite a different thing from a claim of a right, and section 3 expressly says that a claim for a loss "shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945."

The claim this plaintiff filed was not a claim for relief, but was a claim of a right to which it said it was entitled under its contract.

I quite agree that the Lucas Act is broader than the First War Powers Act, but I do not think that a prerequisite to any relief under the Lucas Act is the prior filing of a claim, between September 16, 1940, and August 14, 1945 for relief under the First War Powers Act. Because plaintiff in this case failed to file such a claim for relief, I do not think it is entitled to maintain an action under the Lucas Act.