## PENNINGTON v. UNITED STATES.
### No. 49205.

United States Court of Claims.

Decided March 6, 1951.

L. Karlton Mosteller, Oklahoma City, Okl., for plaintiff.

William A. Stern, II, Washington, D. C., with whom was Acting Asst. Atty. Gen., Newell A. Clapp, for defendant.

Before JONES, Chief Judge, and MADDEN, WHITAKER, HOWELL and LITTLETON, Judges.

MADDEN, Judge.

The Government has demurred to the plaintiff's amended petition on the ground that it does not state facts sufficient to consitute a cause of action.

The plaintiff's petition states that his action is brought pursuant to the Lucas Act, 60 Stat. 902, 41 U.S.C.A. § 106. Note, on account of losses incurred by him in performing, as a subcontractor on two contracts, and a prime contractor on a third contract, work at various airports where construction was being performed for the United States acting through the Civil Aeronautics Administration.

The First War Powers Act, 55 Stat. 839, 50 U.S.C.A. Appendix, § 611, empowered the President to authorize officers of the departments involved in war contracts, to amend such contracts, without consideration, if doing so would further the prosecution of the war. Contractors who found that they were losing money on their contracts filed requests for relief with the departments. At the end of the fighting war, there was a question as to whether the departments were still authorized to give relief, since relief would hardly further the prosecution of the war. There was disparity of treatment of contractors who had requests for relief pending in different departments. See Howard Industries, Inc., v. United States, 83 F.Supp. 337, 113 Ct.Cl. 231, 238. The Lucas Act, passed in 1946, provided that a war contractor who had incurred a loss in the performance of his contracts might file a claim for such loss with the department with which he had contracted. But in its Section 3 it said: "Sec. 3. Claims for losses shall not be considered unless filed with the department or agency concerned within six months after the date of approval of this Act, and shall be limited

to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945 * * *."

In Fogarty v. United States, 340 U.S. 8, 71 S.Ct. 5, 8, the Supreme Court held that the written request for relief referred to in Section 3 had to be: "* * sufficient to apprise the agency that it was being asked to grant extra-legal relief under the First War Powers Act for losses sustained in the performance of war contracts."

The Court further said that since the claimant in that case had sought relief as a matter of legal right, for requisitioned property and for breach of contract, he had not satisfied the condition stated in Section 3 of the Lucas Act.

In the instant case, the plaintiff has set forth in his petition the claims filed by him, as to his prime contract and one of his subcontracts, and the claim filed by his prime contractor, which included claims on his behalf, as to his other subcontract with the Civil Aeronautics Administration, before August 14, 1945. The plaintiff says that these claims satisfied the requirements of Section 3 of the Lucas Act and that, they having been denied, he was qualified to file a claim with the Civil Aeronautics Authority under the Lucas Act, and, upon its denial, to bring a suit in this court to compel the authority to award him the money which he claims.

The Government says that a reading of the alleged requests for relief, attached to the plaintiff's petition, which were filed by him or on his behalf with the Civil Aeronautics Authority before August 14, 1945, shows that they do not satisfy the requirements of Section 3. As to the two documents, referred to in paragraph 7 of the plaintiff's petition, the texts of which are printed on pages 41 ff. and 51 ff., respectively, of the record, the Government is obviously right. They are not requests for relief, either under the First War Powers Act, 50 U.S.C.A. Appendix, § 601 et seq., or otherwise. They ask for nothing at all, either by right or by grace.

They were forms, filled out by the plaintiff at the request of the Government, showing many details regarding the performance of the two contracts, which information the Government apparently desired for statistical purposes. They showed, among many other things, in each case that the plaintiff had incurred a loss on the contract. But they expressed no anguish, no expectation, no hope. This may have been because the plaintiff operates in that part of the country where men are reputed to be men who take their losses, and gains, *inter alia,* straight. Or it may have been because the plaintiff had never heard of the First War Powers Act, or any other rule whereby one could call for a new deal if his bid misfired. He would probably have been equally surprised if he had made a profit and then learned that, in that presumptively happy situation, he would be "renegotiated." In any event, these cold documents fall far short of the supplications for grace required by the Fogarty decision.

As to the plaintiff's other subcontract, referred to in paragraph 5 of the plaintiff's petition, the prime contractor, Trinidad Asphalt Manufacturing Company, at the completion of the contract, filed a "claim" against the Civil Aeronautics Administration consisting of six items. Items V and VI which are, respectively, on pages 30ff and 33ff of the record, were asserted on behalf of the plaintiff as Trinidad's subcontractor.

The "Conclusion" of the document filed by Trinidad was as follows: "It is respectfully submitted that Trinidad Asphalt Manufacturing Co., Incorporated, a corporation, the prime contractor under the above-styled contract with United States of America, is entitled to receive payment for Items I to VI, both inclusive, on behalf of itself and its subcontractor, Steve Pennington, for the reasons set forth in each Item, or a total additional payment under said contract in the amount of $193,797.41."

This language is an assertion of right, not a request for relief as a matter of grace. And the language of Items V and VI of the claim is consistent with the conclusion. In Item V the Government is, in effect, charged with breaches of its contract in that it caused Trinidad, and the plaintiff as its subcontractor, to bring their equipment to the job, and then, by its failure to have necessary preliminary work done, and by the issuance of a stop order, kept the equipment idle. The claim is for the rental value of the equipment for the time that it stood idle. In Item VI the Government is charged with either a change in specifications without the contractor's knowledge or consent, or with improper organization of the work, which delayed the start of the work and permitted it to go forward for only a short time before a stop order was issued. Because of the delay, and the removal of an essential railroad spur, gravel had to be stockpiled and rehandled, and later had to be trucked for a long distance, at greatly increased expense, which Trinidad claimed on behalf of the plaintiff.

These items seem to us to be assertions of claims for breaches of contract. Our conclusion is that the documents filed by the plaintiff, or on his behalf, with the Civil Aeronautics Authority before August 14, 1945, did not satisfy the requirement of Section 3 of the Lucas Act as construed by the Supreme Court in the Fogarty case. The Government's demurrer to the petition is sustained, and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.