188

view of the failure to establish irreparable injury.

Whether the limitations of that Act apply to injunctions at the suit of employees at all, and, if so, whether its conditions have been met, may well await proof on irreparable damage and adequacy of remedy-at-law.

The motion for summary judgment is denied.

**ROSS ENGINEERING CO., Inc.**

v.

**UNITED STATES.**

No. 48832.

United States Court of Claims.
April 6, 1954.

Bernard J. Gallagher, Washington, D. C., for plaintiff. J. Roy Thompson, Jr., Washington, D. C., was on the brief.

Carl Eardley, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

MADDEN, Judge.

This case is before us on the issue whether, under the facts as proved, the plaintiff has legal standing to recover under the War Contract Hardship Claims Act, commonly known as the Lucas Act.

The Lucas Act, Act of August 7, 1946, C. 864 §§ 1–6, as amended June 25, 1948, C. 646 § 37, 62 Stat. 992, 41 U.S.C.A. § 106 note, provides that a contractor or subcontractor who furnished work, supplies or services during the war period to a department or agency of the Government which had power to give relief to contractors under the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq., and who asked for such relief, and

who suffered a loss in his performance of his contract, which loss was not compensated by profits on other Government contracts during the period, may be compensated by the contracting department for his losses, and if not compensated, may sue in this court for compensation for losses incurred without fault or negligence on his part in the performance of his contract or subcontract.

The plaintiff had a contract, during the war period, to construct for the Navy Department an Armed Guard School at Camp Bradford in Virginia. The Navy Department had the power to give relief to contractors under the First War Powers Act. The plaintiff lost money on certain phases of the performance of its contract. It requested relief for those losses under the First War Powers Act. It was given no relief by the Navy. After the enactment of the Lucas Act the plaintiff took the steps prescribed by the Act to qualify itself to sue in this court, and thereafter did bring this suit.

For reasons of economy the hearing held before our commissioner was limited to the taking of evidence bearing on the causes of the plaintiff's losses, with particular reference to whether they were due to the plaintiff's fault or negligence in the performance of the contract. The fault or negligence question has been argued before the court, and also the question whether losses resulting from bad weather are compensable under the Lucas Act.

The Government asserts fault or negligence, within the meaning of the Lucas Act, against the plaintiff in relation to the plaintiff's losses in two situations, each of which involved a mistake in the plaintiff's bid.

In the first situation, the person who computed that part of the bid relating to some road work, mistook a marking of square yards on a drawing for square feet, hence he estimated only one-ninth as much road to be built as actually had to be built. Before the contract was made, the mistake was called to the plaintiff's attention, but the plaintiff

thought it could make up for the loss by its profit on other parts of the contract, so it stood by its bid. It lost heavily, of course, on the building of the roads.

██ In our recent case of Spicer v. United States, 127 Ct.Cl. ——, 118 F. Supp. 377, we dealt with the question of an unduly low bid as fault or negligence within the meaning of the Lucas Act. We concluded that it was not such fault or negligence; that the Government having, after the completion of the contract, generously decided to compensate the contractor for his losses, was still only paying for the value which it had received, and which it would have had to pay for in the contract price if the bid had not been unduly low. We adhere to the views expressed in the Spicer case.

The other low bid situation in the instant case had to do with so-called collateral equipment. This was furniture, office machines, tables, bunks, fans, etc. The contract said that the contractor should furnish and install the collateral equipment; that he should include a cash allowance of $130,000 for furnishing the equipment; and that if it cost more than that to furnish it, he would be compensated for the additional cost. The plaintiff, in making its bid, misread the contract to mean that the $130,000 was for both the furnishing and installing of the equipment, and that if it cost more than that to furnish and install it, the plaintiff would be compensated for the additional cost. It therefore did not include anything in its bid for installing the equipment, which work cost it a considerable sum. We conclude, as we have concluded with regard to the road situation, that the mistake in bidding was not fault or negligence which barred recovery under the Lucas Act.

██ The plaintiff's work was delayed by an excessive number of rainy days. To make up for the lost time, it worked its employees overtime and paid a large amount of premium pay for the overtime work. It thereby suffered a loss. The Government says that a loss due to bad

weather does not come within the reason of the Lucas Act, since contractors in peace time as well as wartime have bad luck with weather, and suffer losses therefrom. The Government does not, of course, urge fault or negligence in connection with the weather. We see nothing in the Lucas Act which authorizes us to limit the kinds of losses for which Congress granted compensation to losses peculiar to wartime. It would be difficult to administer the Act by such a test.

The Government says that the plaintiff has not satisfactorily proved that the overtime employment was caused by excessive rain. If it was not, it would seem that the loss was still recoverable under the Lucas Act unless it was found to be due to some fault or negligence of the plaintiff. We have not so found.

The Government says that the plaintiff had legal claims which it waived, and hence it has no rights under the Lucas Act. The plaintiff, in a case reported in 118 Ct.Cl. 527, sued the Government for breach of contract, claiming as damages the losses incurred on account of the collateral equipment situation and the excessive overtime resulting from delays caused by excessive rain. The court held that the plaintiff's asserted construction of the contract provision relating to collateral equipment was wrong, and that it had received all that it was entitled to under the contract in that regard. We held that because the plaintiff had not taken an appeal from the refusal of the contracting officer to grant an extension of time on account of excessive rains, it could not assert that refusal here as a breach of contract.

The Government says that as to the mistakes in the bid relating to the roads and the collateral equipment, the plaintiff had a legal right to withdraw its bid, because of the mistake known to the Government when the bid was accepted; that the plaintiff chose not to take advantage of this right and thereby waived its legal claim. It says that as to the rainy weather, the plaintiff had a right to an extension of time, assuming that the rains were excessive, as the plaintiff says they were, and it would have received the extension if it had made its appeal. The Government reminds us that, in ordinary litigation, one cannot waive his legal rights and seek equitable relief instead.

It may be useful to look again at the Lucas Act, the statute here applicable. It says that a war contractor who suffered losses not due to his fault or negligence, in the performance of his contract, and who, during the prescribed period, requested relief from those losses under the First War Powers Act, shall be compensated for those losses if he takes certain steps prescribed by the Act. Thus briefly stated, the Act seems plain and simple. An effort by the Executive to put a gloss on the statute by Executive Order 9876, 22 U.S.C.A. § 1382 note, which would have had the effect of disqualifying many claimants who seemed to have rights under the statute, was held invalid by this court in Howard Industries v. United States, 83 F.Supp. 337, 113 Ct.Cl. 231. In Fogarty v. United States, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10, the Supreme Court held that the request to the contracting agency for relief must be a request for extra-legal relief, the kind contemplated by the First War Powers Act, and not a claim of a contractual right. We think that the statute, and the obviously sound rule of the Fogarty decision, should be our text.

The plaintiff was a war contractor. It suffered losses in the performance of its contract. It requested First War Powers Act relief *in haec verba*. After the enactment of the Lucas Act it took the prescribed steps to reach this court. We are now asked to put a gloss upon the statute which will deny the plaintiff what the statute gives it. We are asked to say that although the contractor requested First War Powers Act relief, he may not have Lucas Act relief if, at any stage of the proceeding he had, or possibly had, a legal claim which he did not pursue.

Suppose a contractor was building an installation for the Army. He encountered an unforeseen condition, as to which, under the contract, he was entitled to an equitable adjustment under Article 4. He was so busy getting the job done that, instead of calling the attention of the contracting officer to the condition before it was disturbed, he proceeded, at large expense, to cope with it. His right under the contract to compensation for the extra work having been lost, he requested relief under the First War Powers Act. Can there be any doubt of the power of the contracting agency to give him that relief, if it thought it wise to do so? And if the agency did not give him relief, and if he suffered a loss on the contract, can there be doubt as to his right to make use of the Lucas Act?

We have no urge to invent reasons for denying to claimants what the statute gives them, when we can think of no reason why the Congress would have desired that its Act be read more narrowly than it was written.

The Government confronts the plaintiff with what is, in substance, the doctrine of clean hands, with regard to the overtime and the rainy weather. In 1945 a subcontractor of the plaintiff, the MBS Company, brought a suit against the plaintiff in a United States District Court in Virginia, for money alleged to be due it under its subcontract and for work done by it outside the scope of the contract. The plaintiff filed a counterclaim in that suit, asserting that due to the negligence of MBS in failing to promptly complete the drainage and road work which MBS had contracted to perform, the plaintiff had been delayed and as a result had been obliged to use an excessive amount of overtime work. Thus, by its counterclaim, the plaintiff was attempting to recoup against MBS the loss relating to overtime which loss is one of the losses which it seeks to recover under the Lucas Act. The jury found against the plaintiff on its counterclaim, so we have no problem of the plaintiff's being twice compensated for the same loss. But the Government says that the testimony of the plaintiff's president in the District Court suit was so inconsistent with his testimony in the instant suit that it would be immoral to allow the plaintiff to have the benefit of his testimony in the instant suit.

In the District Court suit the plaintiff was claiming that the subcontractor did not properly perform its work on the surface drainage system and the roads, and that the plaintiff was damaged by that failure. The lack of drainage could not, of course, have affected the plaintiff's work if there had not been rains. But with rains, even excessive rains, the question of whether the work could get forward, of how long it would be after a rain before the site was fit to work on, would depend upon the drainage and the roads. There would be, in almost any imaginable case, room for an honest difference of opinion as to how much the effect of the rains would be minimized by adequate drainage of the surface. It seems to us that it was not unnatural for the plaintiff's president, in that case, to put the emphasis on the lack of drainage rather than on the excessiveness of the rainfall. He was asked if there was not "a considerable volume of rain" during the period in question. He did not deny it. He said there was some rain which made the performance more difficult that it would have been if there had been adequate drainage at the proper time. The jury in the District Court case must have concluded that MBS had not been delinquent in its obligations with regard to providing drainage. In the instant case the witness emphasized the amount of rain as the cause of the delay and the use of overtime. He was not questioned as to the effect of lack of adequate drainage. The physical fact of the number of days of rain, and of the time lost as a result of the rain is not open to dispute. We see in the facts which we have recited no reason for, in effect, forfeiting the plaintiff's right.

The plaintiff has a right to recover, if, in further proceedings, it makes the necessary proof of loss.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

**SMITH**

v.

**ACADIA OVERSEAS FREIGHTERS, Limited.**

**THE VICTORIA COUNTY.**

No. 103 of 1950.

United States District Court
E. D. Pennsylvania.

April 15, 1953.

See, also, D.C., 104 F.Supp. 793.

Stark & Goldstein, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Philadelphia, Pa., for defendant.

WELSH, District Judge.

This is a motion of libellant to set aside respondent's notice of the taking of depositions of Thomas Winters, Anthony Sharkey and Joseph Danby.

Libellant's contention is that respondents are barred from taking the depositions of said persons because respondents in their answers to interrogatories propounded by libellant failed to disclose the identity of said persons. Respondents' answer to the contention is that at the time they filed answers to interrogatories they had no information concerning said persons.

It would appear that respondents' answer to libellant's contention disposes of the matter. We feel however that the matter is governed by an order of this Court entered on April 20, 1953 in Wolf v. Dickinson, 15 F.R.D. 407, amending an opinion and order previously entered in said case. That order provides that where an interrogating party specifies the interrogatories shall be deemed continuing so as to require answers thereto up to the time of trial there is a