**UNITED STATES of America, The Department of the Army (formerly War Department), of the United States of America; and War Contract Hardship Claims Board, Appellants,**

v.

**CHAS. M. DUNNING CONSTRUCTION COMPANY, Appellee.**

No. 4874.

United States Court of Appeals
Tenth Circuit.

May 23, 1955.

Rehearing Denied June 28, 1955.

724

Isidor Lazarus, Atty., Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Paul W. Cress, U. S. Atty., Oklahoma City, Okl., and Melvin Richter, Atty., Department of Justice, Washington, D. C., were with him on the brief), for appellants.

R. C. Jopling, Jr., Oklahoma City, Okl. (F. M. Dudley, Oklahoma City, Okl., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Charles M. Dunning Construction Company, herein called the contractor, under the Lucas Act,[1] as amended, to recover certain losses on a war contract. Trial was had to the court sitting as a court of equity. Judgment was entered in favor of the contractor and against the United States and the Department of the Army for $177,526.01, together with costs of the action.

The Lucas Act provided for reimbursement of losses sustained by contractors on war contracts under certain conditions between September 16, 1940, to August 14, 1945. During this period the contractor performed seven war contracts as an individual contractor. In addition it and two other contractors as joint venturers performed two additional war contracts. The contract on which a substantial loss was claimed, on which the claim was filed, and on which this suit was predicated, was contract No. W-957-eng-1890, herein called the principal contract. The other contracts need not be specifically designated or analyzed herein.

The contractor claimed it sustained a large loss in the performance of the principal contract because of delay without its fault and because of additional requirements by the Government. On October 16, 1943, it filed with a representative of the Government a request for an adjustment of the contract in the amount of $570,781.59, all of which loss was claimed because of 28 days delay. By subsequent letter it modified its claim to $489,098.50. After conferences between the respective parties, it was agreed that under the First War Powers Act of 1941,[2] which was in force at that time, the contractor was entitled to recover a certain amount of losses which it incurred. The claim was eventually amended and adjusted to $309,500.74, and after some minor adjustments the claim was paid in an amount of $312,827.70. As a condition of receiving payment, the contractor was required to and did sign a release of all claims it might have against the Government, except a small claim for painting.

On January 18, 1947, after the passage of the Lucas Act, the contractor filed a timely claim with the proper agency which as ultimately corrected sought the recovery of an additional sum of $207,071.27 on the principal contract. This claim stated that it was being submitted pursuant to the Lucas Act and in accordance with Executive Order 9786. The company's claim of October 16, 1943, and the amendment thereto were referred to therein and copies of the same were attached. All of the remaining eight contracts with the Government in which the contractor had participated between September 16, 1940, and August 14, 1945, were mentioned and taken into account in the claim. The relief sought was not in excess of the claimed net loss on all Government contracts. The claim was considered by the War Contract Hardship Claims Board and was dismissed for the reason that the settlement of the original claim was considered a bar by virtue of Executive Order 9786.

■ The main item from which loss stemmed in the performance of the principal contract was delay. Because of delays the Government required the contractor to work on a basis of a 24 hour day and 7 days a week and to add sufficient plant equipment and labor to insure completion of the project within the contract time. It is not necessary to detail the items of additional expense incurred because of this. It is sufficient to say that the increased expenditures were heavy. The trial court found that there was a total of 28 days in delays which were not caused by the fault or negligence of the contractor. In our view the record sustains this finding.

■ Numerous assignments of error are urged for reversal to which consideration will be given. It is contended

---

1. 41 U.S.C.A. § 106 note; Executive Order No. 9786, U.S.Code Cong. Service 1946, p. 1848.

2. 50 U.S.C.Appendix, § 611.

that the contractor's written request for relief prior to August 14, 1945, failed to confer jurisdiction or prove a cause of action under Section 3 of the Lucas Act because relief was claimed on only the principal contract. It is contended that the claim should have been based on all nine contracts in which the contractor participated. Obviously, this position is untenable. The letter dated October 16, 1943, submitting one claim in the sum of $489,098.50 and the letter of July 17, 1944, modifying the original claim to $309,500.74 were both submitted with respect to loss suffered on the principal contract. Neither letter made reference to the remaining eight contracts because nothing was sought to be recovered under any of those contracts. Recovery only of loss on the principal contract was sought under the First War Powers Act. At the time the original claim was made, the Lucas Act had not been enacted. After the passage of the Lucas Act and under its provisions the contractor sought, as it had a right to, to recover the balance of its claimed loss on the principal contract which it had not received in the first settlement and which it could now claim under the Lucas Act by complying with its provisions. All that it sought was recovery of the balance of the loss on the principal contract. It was not required to make a claim for loss on all contracts it had with the Government. Save for the provision of Section 2 of the Lucas Act, providing that the respective department or agency should not allow any amount in excess of the net loss on all contracts held by the claimant with the Government between September 16, 1940, and August 14, 1945, no reference need have been made to the remaining contracts. But to comply with that provision it was necessary to call them to the attention of the proper agency. Reference was made to these other contracts in the claim filed under the Lucas Act to recover the balance of the uncompensated loss on the principal con-

tract. The Government was apprised of those contracts and the status thereof. Failure to claim loss on any of them was not fatal to a proper claim for the balance of the loss which the contractor claimed had not been recovered in the settlement of its claim filed under the First War Powers Act.

Meister v. United States, D.C., 106 F. Supp. 292, upon which the Government relies, is not applicable because there the claimant under the Lucas Act failed to make any disclosure of some additional 20 contracts which he had performed for the Government during the period of time covered by the Act. There was also a suggestion of fraud on the part of the claimant.

■ The Government's contention that the contractor claimed legal relief for the breach of the contract rather than extra legal relief as a matter of grace needs but little attention. It is abundantly clear that both in the original claim under the First War Powers Act as well as in the claim under the Lucas Act the request was for extra legal relief. The claim in the form of a lengthy letter makes it clear that the contractor was asking for an adjustment of losses incurred without fault on its part and that no claim was made as a matter of right. A statement in Prebilt Co. v. United States, D.C., 88 F.Supp. 588, 591, seems in point. There the court said, "Surely a claimant under the Lucas Act is not to be barred because, when it sought relief months before August 14, 1945, it was not enough of a prophet to phrase its claims specifically in the words of a statute which was still months in the future. It is enough if, before that critical date, it put the government on notice that it sought not merely such adjustments as it might be entitled to have made as a matter of right under its contract, but also that it asked relief over and above its strict contract rights." [3] Appellants' contention that because the contractor reduced its original claim

---

3. See also Howard Industries, Inc., v. United States, 83 F.Supp. 337, 113 Ct. Cl. 231; Holt-Fairchild Company v. United States, 111 F.Supp. 930, 125 Ct. Cl. 83.

down to roughly $300,000 and that since this claim as reduced at the suggestion of the Government was allowed there was no claim left and no written request for relief left upon which to base this action under the Lucas Act does not require serious consideration.

It is contended that appellants' claims are barred because they were released, discharged, or disposed of by final action before August 14, 1945, and were also barred by Paragraphs 204 and 307 of Executive Order 9786.[4] Paragraph 204 provides that " * * * no claim shall be considered if final action with respect thereto was taken on or before that date. [August 14, 1945.]" But Section 3 of the Lucas Act specifically provides that a previous settlement under the First War Powers Act of 1941, 50 U.S.C.A.Appendix, § 601 et seq., or the Contract Settlement Act of 1944, 41 U.S.C.A. § 101 et seq., shall not operate to preclude further relief otherwise allowable under the Act.

There is a conflict in the authorities as to whether Paragraph 204 of Executive Order 9786 is invalid as contravening Section 3 of the Act.[5] In Fogarty v. United States, 80 F.Supp. 90, the district court held that the provision of Section 3 of the Act providing that a previous settlement of the claim under the First War Powers Act had application only to unilateral settlements and that paragraph 204 of Executive Order 9786 was not in conflict therewith because it had reference to final bilateral settlements. Upon review by the Supreme Court, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10, it was held that no adequate request for relief was filed and it was specifically stated that the court did not reach the issue of a possible conflict between Section 3 of the Act and Paragraph 204 of Executive Order 9786.

It is our view that if there is a conflict between Section 3 of the Act and Paragraphs 204 and 307 of Executive Order 9786, the latter are invalid because they clearly contravene the clear meaning of Section 3 of the Act. Neither the judicial nor executive branch of the Government may enact or amend legislation.[6] Under similar factual situations, the court of claims held in Howard Industries, Inc., v. United States, 83 F. Supp. 337, 343, 113 Ct.Cl. 231, that a settlement either by unilateral or bilateral agreement was no bar to a subsequent claim under the Lucas Act.

In any event, it is clear from the record that this was a unilateral settlement and did not purport to be a settlement and payment of the entire loss suffered without negligence on the part of the contractor. The opinion of the War Contract Hardship Board quoted from a letter of September 22, 1944, from the Office of the Chief of Engineers, Purchasers Division, Headquarters Army Service Forces, which recommended relief in the sum of $312,827.70, in which letter it was stated that the proposed settlement of $312,827.70 was considerably less than the total loss on the contract; that judging from the contractor's previous record it was reasonable to believe that the excess of loss over that

---

4. Paragraph 204 of Executive Order 9786 provides in part that " * * * no claim shall be considered if final action with respect thereto was taken on or before * * * [August 14, 1945]."

Paragraph 307 of Executive Order 9786 provides in part that "Relief with respect to a particular loss claimed shall not be granted * * * unless the war agency considering the claim finds, * * * that relief would have been granted under the First War Powers Act, 1941, if final action with respect thereto had been taken by the war agency on or before August 14, 1945."

5. Warner Construction Co. v. Kurg, D.C., 80 F.Supp. 81; McGann Mfg. Co. v. United States, D.C., 98 F.Supp. 225; Warner Construction Co. v. United States, 115 F.Supp. 465, 127 Ct.Cl. 1; Ross Engineering Co. v. United States, 120 F.Supp. 188, 128 Ct.Cl. 27; Fogarty v. United States, D.C., 80 F.Supp. 90.

6. Warner Construction Co. v. Kurg, D.C., 80 F.Supp. 81; McGann Mfg. Co. v. United States, D.C., 98 F.Supp. 225; Howard Industries, Inc., v. United States, 83 F.Supp. 337, 113 Ct.Cl. 221; Ross Engineering Co. v. United States, 120 F. Supp. 188, 128 Ct.Cl. 27.

recommended for settlement did not result from inefficiency of the contractor. The letter makes it clear that the amount recommended for settlement was the amount of loss calculated as a direct result of Government action. It thus appears that the partial settlement recommended was for losses directly attributable to Government action and not in settlement of all losses resulting without negligence on the part of the contractor and was not considered as a full and final settlement of the entire claim. It is also clear from the evidence that the contractor had no alternative but to accept the settlement because of its precarious financial condition. It is our view that the sum allowed was in reality a unilateral administrative determination of the amount due.[7] No further relief was available to the contractor until the passage of the Lucas Act. It was no doubt such situations Congress had in mind when it enacted Section 3 of the Act.

One of the principal grounds relied upon for reversal is that the contractor failed to establish an over-all net loss. Save with respect to some minor items, this controversy centers around two items, one for $69,982.39, which was paid to the principal officers of the contractor as salaries for work and services rendered in the performance of the principal contract, and the further sum of $52,800 allowed as salaries to the principal officers of the contractor under the joint venture contracts. There is no contention that the services were not rendered or that the amounts claimed therefor were excessive. It is also clear that the court took these two items into account in determining the total loss on the principal contract.

The evidence shows that generally the corporation's officers and directors met at the close of each year and fixed the salaries of the officers for the previous year; that during the year they drew out such sums of money as they needed for living expenses and charged those against the salaries they subsequently voted themselves. However, for the year 1943, the year during which the main contract was being performed, because of the precarious financial condition of the corporation they did not allow themselves any salaries. They did, however, withdraw the sum of $69,982.39, which they entered on the books of the corporation as living expenses. Because of the financial condition of the company, they did not at the end of that year allow that sum as salaries for 1943, but credited it against outstanding obligations which the company then owed them for unpaid salaries and deferred dividends for preceding years.

It would seem obvious that there was no subterfuge in this and that the manner in which this item was handled for 1943 was for the purpose of improving the financial status of the corporation. It is also clear that the sums so withdrawn actually were for salaries and would have been so allowed save for the financial condition of the company. It is also quite clear that this sum constituted valid charges and costs incurred in the performance of the contract and was a proper cost item of construction. That this item was a proper item to be considered in determining the total cost of the project cannot be disputed. The services were necessary in completing the project. Had they not been performed by the officers, they would of necessity have been performed by other employees.

█ The difficulty, however, is that when the contractor on October 16, 1943, filed its claim upon which this action is predicated under the First War Powers Act, it specifically stated therein that "This loss includes no salaries or compensations to the officers of the company for their services." In other words, the loss resulting from the payment of salaries to the officers in the amount of $69,982.39 was not within the claim filed by the contractor. As to this item, no claim as required under the First War Powers Act was ever filed.

7. See Illinois Surety Company v. United States, to the use of Peeler, 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609.

Section 3 of the Lucas Act provides that "Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, * * *." Since no such request was filed as required by Section 3 with respect to the $69,982.39 item and since in fact by express statement in the claim, it was not included in the claim, no recovery could be had therefor under the Lucas Act.[8]

We are of the further view that the court erred with respect to the $52,800 item. While not so specifically stated in the findings, it is clear from the record that the court deducted this sum from the contractor's share of the fixed fee under the two joint venture contracts, in determining the net profits on those contracts, in order to arrive at the net loss on the principal contract. It is obvious that reducing the profits on any of the remaining contracts correspondingly increased the recoverable cost on the principal contract. The joint venture contract provided that of the profits received thereunder the first $3,200 per month should be divided, one-half to the contractor and one-fourth to each of the remaining joint venturers. The contractor then in turn paid the $1,600 per month (its share of this division) to two of its principal officers, presumably as salary for services rendered in discharging the contractor's obligation to supervise the work on the two contracts. The sum of $52,800 represents the amount paid to these two officers as salary.

It is doubtful if Congress in the passage of the Lucas Act had in mind fixed fee contracts in which a contractor assumed no financial responsibilities and for a fixed fee merely supervised the construction of the project. It seems clear from the testimony before the committee and its report that what Congress had in mind was contractors who in the performance of a contract for a fixed contract price under which the contractor assumed all costs of the project suffered substantial losses without fault or neglect on his part. It was such losses that Congress wanted to compensate notwithstanding there was no contractual or legal obligation on the part of the Government therefor.[9] It was pointed out in the sub-committee hearings that it was the large contractors who generally were awarded the cost plus fixed fee and guaranteed profit contracts who would not need this remedy, while the smaller contractor who could ill afford the risk, of necessity, took the smaller contracts by competitive bidding.[10]

As has been pointed out, the Lucas Act was passed to give relief beyond that afforded by the contract or as a matter of legal right. It was in a way the expression of appreciation by a grateful Government for the effort put forth in a titanic struggle. Because of the need of haste for war contracts, fast moving conditions, and a rising cost of material and labor, the Government felt that relief should be given in extraordinary cases where loss was suffered without the fault of the contractor. It was intended to apply in cases of unforeseen and unanticipated conditions. Such conditions were present in the performance of the principal contract upon which this claim is predicated. They were not present nor could they be present in the performance of fixed fee contracts.

The entire amount received by the joint venturers constituted profits. They so spoke of the fixed fee in the contract creating the joint venture. In the part of the agreement providing for the division of the first $3,200 received under the contract, they referred to that sum as profits and stated that the first $3,200 of profits received should be divided as therein provided. When the $52,800 was received by the contractor, it was en-

8. See Spicer v. United States, 118 F.Supp. 377, 127 Ct.Cl. 428; Rosner v. United States, 113 F.Supp. 439, 125 Ct.Cl. 614; Prebilt Co. v. United States, D.C., 88 F.Supp. 588; Stephens-Brown, Inc., v. United States, D.C., 81 F.Supp. 969.

9. United States Code Congressional Service, 79th Congress, 2nd Session, 1946, Page 1443.

10. Hearings before a subcommittee of the committee on the Judiciary, 79th Congress, 2nd Session, on S. 1477, Page 9.

tered on its books as profits the same as the remaining portion of its fee.

The contract by the Government with the joint venturers specifically provided that "No salaries of the Contractor's executive officers * * * shall be included in the cost of the work." What the court in effect did was to amend the contract by including the salaries of the two executive officers in the sum of $52,800 as a part of the construction cost of the project. No matter how viewed, the court's conclusion had the effect of requiring the Government to pay this sum twice, once as a part of the fixed fee and again as a part of the recoverable cost of the principal contract.

■ It is not necessary to decide whether the corporate contractor could in filing its income tax return deduct from receipt of the fee the amount paid to its officers as costs of supervising the construction contract. It is sufficient to hold that within the spirit of the Lucas Act and the hardship situations to which it was intended to apply, when the court came to consider the remaining contracts in which the contractor participated, in order to determine the net amount of loss suffered in the performance of the principal contract, the entire fixed fee should have been treated as the parties treated it, as they denominated it in their joint venture contract, and as they entered it on their books, namely, as profit.

■ It is further urged that the court erred in denying the motion to dismiss the action as to the defendants, the Department of the Army and the War Hardship Claims Board. It is argued that Section 6 of the Lucas Act confers jurisdiction on the courts of direct action by interested war agencies; that no jurisdiction is given to sue such agencies and that in the absence of authorizing legislation they are not subject to suit in an action of this kind. We are, however, of the view that the provision in Section 6 empowering the court to enter an order

determining the amount to which the claimant is equitably entitled and directing the department or agency to make settlement in accordance therewith makes a proper agency a proper party defendant.

■ Finally, it is urged that the court erred in rendering the judgment. The judgment of the court provided,

"1. Plaintiff is entitled to a settlement of its claim by defendants and each of them and is equitably entitled to payment or reimbursement in the sum of $177,526.01.

"2. The United States of America and the Department of the Army of the United States are hereby ordered and directed to settle plaintiff's claim of January 18, 1947, by paying to plaintiff the sum of $177,526.01.

"3. Judgment is hereby entered in favor of plaintiff and against the United States of America and the Department of the Army (formerly War Department) of the United States of America in the sum of $177,526.01, together with the costs of this action."

Section 6 of the Lucas Act, as amended, authorizes the court to determine the amount, if any, to which the claimant and petitioner is equitably entitled and to enter an order directing such department or agency to settle the claim in accordance with the finding of the court. But it does not in express language or by fair implication empower the court to enter judgment against the United States for any amount. In the absence of Congressional consent, either expressly or impliedly given, a money judgment may not be entered against the United States.[11] Furthermore the court erred in rendering judgment against the Government for costs. The United States is liable for costs only when expressly authorized by statute and no such authority is found in the Lucas Act.[12]

11. United States v. Jones, 131 U.S. 1, 17, 18, 9 S.Ct. 669, 33 L.Ed. 90; Munro v. United States, 303 U.S. 36, 41, 58 S.Ct. 421, 82 L.Ed. 633; Reid v. United States, 211 U.S. 529, 538, 29 S.Ct. 171, 53 L.Ed. 313.

12. 28 U.S.C.A. § 2412.

The judgment of the court that plaintiff is entitled to a settlement of its claim by the defendants and is equitably entitled to payment or reimbursement in the sum of $177,526.01 is reduced in amount to $54,743.62 as the amount of equitable relief to which plaintiff was entitled, and it is further modified by striking therefrom the provision for any judgment against the United States and the Department of the Army and striking therefrom the provision for judgment against the United States and the Department of the Army for costs, and as so modified the judgment is Affirmed.