**Walter W. COWHIG et al.,
Appellants,**
v.
**NATIONAL MILITARY ESTABLISH-
MENT et al., Appellees.
No. 12611.**

United States Court of Appeals
District of Columbia Circuit.
Argued April 13, 1956.
Decided June 14, 1956.
Petition for Rehearing Denied
July 16, 1956.

**818**

Mr. Allen H. Gardner, Washington, D. C., for appellants.

Mr. Samuel D. Slade, Atty., Dept. of Justice, with whom Messrs. Leo A. Rover, U. S. Atty., at the time brief was filed, and Herman Marcuse, Atty., Dept. of Justice, were on the brief, for appellees.

Messrs. Oliver Gasch, U. S. Atty., and Lewis Carroll and Harold Greene, Asst. U. S. Attys., also entered appearances for appellees.

Before WILBUR K. MILLER, FAHY and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

This action was filed by Walter W. Cowhig, "individually and as trustee, co-partners engaged in business * * * under the firm name and style of 'White Research Associates,'" against the National Military Establishment, the Secretary of Defense and the Department of the Navy for equitable relief under the War Contracts Hardship Claims Act, commonly known as the Lucas Act.[1] By consent of the parties, the action was dismissed as to the Navy.

Cowhig sought to recover the amount of losses claimed to have been incurred by White Research Associates between September 16, 1940, and August 14, 1945, in the performance of contracts with the Office of Scientific Research and Development (No. OEMsr–1211) and the Bureau of Ships (No. NObs–14580, as amended by No. NObs–21054). The losses were alleged to have been incurred without fault or negligence on the part of the contractor. Numerous complex issues were framed by the pleadings, many of which have not yet been tried. We are concerned here with only two, due to the fact that the District Court severed them to be tried "at a trial separate from and in advance of any hearing on other issues," and entered judgment only with respect to them.

1. One of the issues tried arose from Cowhig's membership in three other partnerships, closely related to White Research Associates, which also had Government contracts during the period involved. The question was whether there was such identity among all four partnerships that their gains and losses should be consolidated, either in whole or in part, in determining the net loss,

---

**1.** An Act of August 7, 1946, 60 Stat. 902, 41 U.S.C.A. § 106 note.

if any, suffered by the appellants in performing the two contracts above described.[2]

2. The other issue severed for early trial was the question whether a settlement agreement concerning contract No. OEMsr–1211, entered into by White Research Associates and the United States, precluded the former from Lucas Act relief on account of losses sustained in performing that particular contract. The question arose from the fact that October 11, 1946, before this suit was filed but after the Lucas Act became effective, White Research Associates, represented by Cowhig and by its receiver in bankruptcy theretofore appointed, entered into a settlement agreement with the United States, represented by the Office of Scientific Research and Development, with respect to contract No. OEMsr–1211. White Research Associates and Cowhig acknowledged receipt of the sum of $423,452.19 "in full satisfaction and final settlement of all their rights under said contract as amended," and the Government released them and the receiver "from any and all obligation further to perform said contract * * *."[3]

After filing two opinions[4] and making findings of fact and conclusions of law, the District Court ordered:

"* * * That judgment be in favor of defendants on Contract No. OEMsr1211, there being no just reason for delay, and for the defendants generally for the offsetting of profits realized by the Wico, Jamaica, and Cowhig partnerships on government contracts during the period from September 16, 1940, to August 14, 1945, in determining the amount which the plaintiffs may be entitled to recover."

This appeal is from the foregoing judgment.

■ We first consider that portion of the judgment which dealt with the question numbered 1 above, and which held that profits realized from Government contracts by the other three partnerships during the critical period must be offset against the losses of White Research Associates in determining the latter's net loss which it may be entitled to recover. This seems to us to be an interlocutory order which merely fixed the method or procedure to be followed in determining the merits at a later hearing, but did not finally adjudicate any claim asserted by the appellants. Whether the three related businesses had profits and, if so, how much, must still be decided by the District Court. That done, it must deter-

---

2. The District Court's order of severance stated this issue in the following three subdivisions:

"g. Whether certain related businesses, namely, the Jamaica Machine Company, Cowhig Engineering Associates, and Wico Nut Sales Company, were conducted as partnerships or other form of organization.

"h. Whether the losses and income from the said related businesses are to be considered in determining the net loss of the claimant, and, if so, how such amounts of losses and income are to be allocated to the plaintiffs in determining such net loss.

"i. Whether, if the losses and income from the said related businesses are to be considered in determining the net loss of the claimant, the plaintiff Cowhig's interests as trustee in these other businesses are to be combined with his own individual interests, and, if these trustee interests are thus to be combined with his own individual interests, how the losses and income of such related businesses are to be allocated in determining such net loss."

3. The District Court thus stated the question in its severance order:

"a. Whether the plaintiffs are precluded from any part of the relief claimed under the War Contracts Hardship Claims Act by an agreement executed on October 11, 1946, between the United States represented by the Office of Scientific Research and Development and the plaintiffs, and, if they are thus precluded from relief, to what extent they are so precluded."

4. Cowhig v. National Military Establishment, D.C.1952, 105 F.Supp. 807; Cowhig v. National Military Establishment, D.C.1953, 109 F.Supp. 519.

mine whether Cowhig's alleged fiduciary interests in the partnerships are to be combined with his individual interests in computing the appellants' net loss. The portion of the judgment now under consideration constitutes an unappealable preliminary step in the process of adjudication. The appeal from the ruling must be dismissed as premature.

We turn to a consideration of the second question before us. The appellants urge that the agreement of October 11, 1946, merely settled the *legal* rights and obligations of the parties under contract No. OEMsr–1211, and did not extinguish what they described as the "extra-legal right to relief conferred by the Lucas Act as a matter of statutory grace." The settlement contract recited, however, that it was made under the First War Powers Act, 50 U.S.C.A. Appendix, § 611, which, like the Lucas Act, contemplates relief by grace and not in recognition of legal rights. Fogarty v. United States, 1950, 340 U.S. 8, 12, 71 S.Ct. 5, 95 L.Ed. 10. This precludes the idea that the contracting parties intended this settlement to extinguish only legal rights and obligations and intended to except therefrom and leave open to Cowhig the right to seek equitable relief, afforded through legislative grace, from losses sustained in performing the contract covered by the settlement.

The appellants further urge, however, that, even had they expressly agreed in the settlement contract "to release their right to *extra-legal* relief, section 3 of the Lucas Act [5] would make such purported release ineffective." Cited in support are United States v. Chas. M. Dunning Construction Co., 10 Cir., 1955, 223 F.2d 723; Howard Industries, Inc., v. United States, 1949, 83 F.Supp. 337, 113 Ct.Cl. 231, and Warner Construction Co. v. Krug, D.C.D.C.1948, 80 F.Supp. 81. In each of these cases the settlement contract which was held not to preclude

relief under the Lucas Act had been entered into before the enactment of that statute. The applicability of the pertinent portion of § 3 was therefore clear.

But here, in the settlement agreement which was executed some two months after the Lucas Act was passed, the appellants acknowledged they had received a sum of money "in full satisfaction and final settlement of all their rights" under the contract involved. This included equitable as well as legal rights, as we have seen. In the absence of a specific provision to that effect, we cannot suppose the parties intended that a right then available under the Lucas Act should be excluded from the broad language of the release. The statutory section itself confirms our conclusion. It says "a previous settlement" under another statute "shall not operate to preclude further relief otherwise allowable under this Act." We think the term "previous settlement" means a settlement made prior to the adoption of the Lucas Act.

For these reasons, we hold the District Court correctly determined that the settlement of October 11, 1946, precluded White Research Associates from relief under the Lucas Act for losses sustained under contract No. OEMsr–1211.

Affirmed as to the ruling on contract No. OEMsr–1211. Appeal dismissed as to the remaining portion of the judgment.

FAHY, Circuit Judge (concurring in part).

I concur in the disposition the court makes of this appeal except its affirmance of the ruling on contract No. OEMsr–1211. As to that contract I think the settlement did not preclude relief under the Lucas Act. Section 3 of that Act provides that "a previous settlement under the First War Powers Act" shall not preclude relief under the Lucas Act. The

---

5. The language of § 3 upon which they rely is as follows:

"* * * [B]ut a previous settlement under the First War Powers Act, 1941,

* * * shall not operate to preclude further relief otherwise allowable under this Act."

settlement in this case, though entered into after adoption of the Lucas Act, specifically relates that it was "negotiated under the First War Powers Act." And I think the terms "previous settlement" in section 3 refer simply to a settlement made prior to the seeking of relief under the Lucas Act rather than to one entered into prior to the adoption of that Act. If this view were that of a majority then the court would need to decide the question whether the action could be maintained notwithstanding the National Military Establishment, appellee, has ceased to exist *eo nomine*.

Edgerton, Chief Judge, and Bazelon and Fahy, Circuit Judges, dissented.